EASTERN MILLING COMPANY
*vs.*
JOHN H. FLANAGAN
AND
GREAT EASTERN LUMBER CORPORATION, ET AL.

Kennebec.   March 16, 1957.

*Sanborn & Sanborn,* for plaintiff.

*Robert Lewin & Edward J. Ridge,*
*Philip E. Lamb,*
*Locke, Campbell, Reid & Hebert,* for defendants.

SITTING: WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ. WILLIAMSON, C. J., did not sit.

BELIVEAU, J.  On motions for a new trial by the defendants to set aside a verdict recovered against them, alleging the following reasons, to wit:

"I. Because it is against law and the charge of the Justice.

II. Because it is against evidence.

III. Because it is manifestly against the weight of evidence in the case.

IV. Because the damages are excessive."

The case was submitted to a jury who found for the plaintiff and assessed damages in the amount of $7,000.00.

The writ contained two counts in tort, one for interfering with business and contractual rights of the plaintiff and the second alleging a conspiracy to interfere with the business and contractual rights of the plaintiff.

In January, 1954, the Great Eastern Lumber Corporation was the owner of real estate situated in the Town of Gardiner which, by a written contract of that date, with Brooks Brown, Jr., it agreed to convey to him, or his nominee, for the sum of $16,500.

On the 6th day of February, 1954, the Lumber Corporation in accordance with the terms of this agreement conveyed the property to Brown's nominee, Progressive Iron Works Realty Corporation (described in this conveyance as a "corporation duly organized by law and located at Augusta, Kennebec County, Maine"), upon payment of the agreed sum of $16,500.  The deed was delivered to and accepted by the grantee.

This sale was authorized at a special meeting of the Board of Directors of the Lumber Corporation held February 6,

1954. At that meeting John H. Flanagan, in his capacity as president and treasurer, was authorized to execute a proper deed to the Progressive Iron Works Realty Corporation.

It is assumed, because the question has not been raised, that the deed was in proper form and the real estate sufficiently described. It was the plan of the Progressive Iron Works to use the building or buildings, on the property conveyed, to carry on what is referred to in the testimony as an iron business; however, it later found a location in Winthrop, Maine, better suited for carrying on this business, and used it for that purpose.

The property in Gardiner remained idle and unoccupied until the 16th day of August, 1955, when the Iron Works entered into an agreement with the Eastern Milling Company, the plaintiff, to convey to it, the same property, for the sum of $20,000.

The deed to the Iron Works was dated February 6, 1954 and recorded in the Kennebec Registry of Deeds on February 8, of that same year, at 9 o'clock in the morning. The incorporation papers of the Progressive Iron Works were recorded in this Registry on the same morning at about 11 o'clock. An examination of the title during the negotiations between the Iron Works and the plaintiff disclosed this situation and the attorneys involved concluded, wrongly we rule, that this created a flaw or defect in the title.

It is the claim of the plaintiff that at 9 o'clock on the morning of February 8, 1954 the Iron Works was not legally competent or qualified to accept the deed because it did not become a corporation until 11 o'clock on the morning when the incorporation papers were recorded.

While the record is silent as to the steps taken by Progressive to complete its incorporation, the implication is unavoidable that some preliminary work, prior to February

6, 1954, had been done to bring this corporation into existence.

In *Clifton Heights Land Co.* v. *Randell* (82 Iowa 89) 47 N. W. 905, the court there holds that a conveyance to an unincorporated company which takes possession under the deed conveys title which vests in the company subsequently incorporated.

We find that the Iron Works acquired a good title at the time the deed was delivered to and accepted by it.

The law imposed on the Lumber Corporation no duty to inquire into the legal competency of the grantee, nominated by Brown. Under its contract it was obligated to convey the property to him, or his nominee, and it had no choice or discretion to do otherwise. Its title or interest in the real estate ceased as of that moment and its responsibilities under the contract with Brown had been fully and completely fulfilled. From that time on, they were complete strangers to the property.

It is contended by the plaintiff that after the question of defect in the title was raised and the Lumber Corporation had been requested to execute a confirmatory deed it refused so to do and agreed with Brown who was attorney for the Iron Works, and not the plaintiff, to make a "token defense" to the Bill in Equity then pending to correct the alleged flaw.

This court is not called upon to pass upon the legality of such a contract and it is not necessary to do so in this case.

In the first instance there was no consideration for the alleged promise and the court will not undertake to determine what was meant by a "token defense." The Lumber Corporation was within its rights in contesting the Bill in Equity. Furthermore such an agreement, if made, was between the Lumber Corporation and Brooks Brown, Jr. who

represented the Iron Works. The plaintiff was not a party to that agreement nor was there privity of any kind between the Lumber Corporation and the plaintiff. The plaintiff could derive no benefit from such a contract.

The charge that the defendants interfered with the contractual rights of the plaintiff cannot be sustained. The deed from the Iron Works to the plaintiff and the purchase price of $20,000 were deposited in escrow awaiting the disposition of the Bill in Equity. The purpose, it would seem, was to protect the plaintiff until the so-called flaw or defect in the title had been corrected.

It is alleged, though denied by Flanagan, that the defendants did not want the plaintiff to own or occupy these premises. There is no evidence to show any overt or positive action by the defendants to prevent the plaintiff or its grantor from enjoying full possession and use of the property.

It is claimed that an asphalt plant was partly on the premises of the Iron Works and that its location prevented the plaintiff from unloading some heavy machinery, to be used in the plaintiff's business.

It does not appear that either defendant was responsible for this, and, apparently, if such was the case, the Iron Works who had owned the premises for a year and a half, raised no objection.

As a matter of law, this plaintiff never had title to the property nor the right to occupy any part of it. The agreement dated August 16, 1955 made no provisions for occupancy by the plaintiff while the deed was held in escrow and there is no evidence in the case that it was given such permission by the owner. It could not exercise any dominion over the property until the deed now held in escrow had been delivered to it. The delivery and acceptance of the

deed is one of the important elements in the sale or transfer of real estate and until delivered is of no effect.

The interference complained of, as we view the case, was the refusal of the Great Eastern Lumber Corporation to execute a confirmatory deed or to cooperate with the Iron Works in the disposition of the Bill in Equity. This conduct on the part of the defendants, if true, gives the plaintiff no cause of action.

*Motions sustained.*

*Verdict set aside.*

*New trial granted.*