**E.G. FISCHER, Plaintiff,**

v.

**BAR HARBOR BANKING & TRUST COMPANY, Defendant.**

Civ. No. 85–0185–B.

United States District Court,
D. Maine.

Sept. 22, 1987.

---

Gilbert P. Verbit, Julius B. Levine, Boston, Mass., for plaintiff.

Thomas M. Brown, John F. Barnicle, Bangor, Me., for defendant.

## MEMORANDUM AND ORDER ACCEPTING MAGISTRATE'S RECOMMENDED DECISION

CYR, Chief Judge.

Plaintiff, a Massachusetts resident, is the owner of a sailboat constructed by Ocean Cruising Yachts of Maine, Inc. [OCY], a company which had obtained financing from defendant Bar Harbor Banking and Trust Company [the Bank]. Plaintiff sues the Bank, demanding compensatory and punitive damages for the alleged threatened conversion of the vessel, slander of title, and infliction of emotional distress, arising out of the Bank's assertion of a lien on the vessel. The complaint also seeks a judicial declaration that defendant does not have a lien on the vessel.

On September 27, 1985, plaintiff moved for partial summary judgment, "complete in regard to the demand ... for declaratory judgment but partial in regard to the demand ... for compensatory and punitive damages."[1] On October 28, 1985, defendant moved to dismiss the complaint or for summary judgment on all issues.

On September 29, 1986, the United States Magistrate recommended the granting of defendant's motion for summary judgment and the dismissal of plaintiff's claim for damages. The Magistrate recommended reserving judgment on the motion for declaratory relief pending the filing of a written statement, within 30 days, demonstrating that the demand for declaratory judgment had not been mooted. The court undertakes *de novo* review of those portions of the Magistrate's recommended decision to which plaintiff has objected. 28 U.S.C. § 636(b).

### I. BACKGROUND

The Bank began financing OCY operations in 1979. In February 1984, two OCY

---

1. On March 3, 1986, plaintiff moved for summary judgment on the request for a judicial declaration that the defendant "acted maliciously in regard to the tort of slander of title."

loans were consolidated, and the $200,000 consolidated loan was secured by a security interest in four boats, including the plaintiff's sailboat hull in progress "OC 39 Hull #XYG39001 1083 (Fischer)." The Bank filed its financing statement on March 12, 1984.

Pursuant to the $172,500 contract for the construction of plaintiff's sailboat, plaintiff had made progress payments in the total amount of $112,125 through March 27, 1984.

Plaintiff remained unaware of any loan arrangements between the Bank and OCY until early May 1984, when he was informed by Henry R. Hinckley III, president of OCY, that OCY was in serious financial trouble,[2] that its loan payments to the Bank were overdue and that the Bank claimed a lien on plaintiff's boat.

On May 19, 1984, plaintiff and Hinckley met with Mr. Avery, president of the Bank, at which time Avery took the position that the Bank would not release its lien on the four boats unless it received a $200,000 loan payment from OCY. The Bank's position was confirmed in writing by John Reeves, vice president and treasurer of the Bank, who wrote to the plaintiff on June 13, 1984, stating that the Bank claimed a lien on his boat and would release its lien only upon payment of $50,000.

Instead of settling with the Bank, plaintiff supplied the Bank with an opinion letter drafted by his attorney, stating that plaintiff was a "buyer in the ordinary course of business" under Me.Rev.Stat. Ann. tit. 11, § 9–307(1) and, therefore, that the plaintiff was entitled to take free and clear of any lien of the Bank.

In late July 1984, plaintiff was informed by Hinckley that OCY was closing its doors. Plaintiff instructed Hinckley to move plaintiff's boat to another boatyard. The boat was removed without Bank interference.[3] Also in late July 1984, Hinckley signed a bill of sale, transferring title in the boat from OCY to plaintiff. On the advice of the attorney for OCY, the bill of sale contained the following notation: "Manufacturers Warranty and Title is Given Subject to Bank Lien."

The following year, on May 24, 1985, plaintiff filed the present action. On October 25, 1985, the Bank filed termination statements with respect to the UCC filings on the four boats. Finally, on June 5, 1986, the Bank filed with this court a release of its lien on plaintiff's boat, dated May 16, 1986.

## II. DISCUSSION

Plaintiff seeks a declaration that the Bank does not have a valid lien on his boat. Although the Bank has delivered a release to the plaintiff, stating that the Bank claims no security interest in the boat, plaintiff argues that any prospective buyer would have to retain counsel to determine the invalidity of the lien noted in the bill of sale, and that this affects the vendibility of the boat. Plaintiff also asserts that defendant could refile its financing statement in Rhode Island, where the boat is located.

Plaintiff also seeks partial summary judgment on his claim for damages, asserting that the Bank "acted maliciously in regard to the tort of slander of title," *see* Plaintiff's Second Motion for Partial Summary Judgment. Plaintiff argues that the Bank, as an experienced lender, knew or should have known that plaintiff occupied the status of a buyer in the ordinary course of business under Me.Rev.Stat.Ann. tit. 11, § 9–307(1) and, therefore, that the Bank should have known that it did not have a valid prior lien on plaintiff's boat. Plaintiff claims that the Bank's assertion of a lien was made in bad faith, for the purpose of "extorting" $50,000 from plaintiff. Plaintiff seeks recovery of the legal expenses incurred to clear the title to the boat, as well as damages for the emotional distress

---

2. Subsequently, in a letter dated May 21, 1984, plaintiff was informed by counsel to OCY that OCY might declare bankruptcy.

3. Plaintiff's boat was taken to Beal's Boat Yard in Bar Harbor, Maine, where construction was completed. Subsequently, on August 23, 1984, it was removed to Rhode Island. The Bank did not attempt to prevent its removal.

which the Bank's intentional or negligent conduct caused him.

The Bank argues that its assertion of a lien on plaintiff's boat was made in good faith, that it was OCY which included the reference to the OCY lien in plaintiff's bill of sale, without any direction from the Bank, and that, in any event, the Bank has relinquished any right it may have had in the boat by filing its UCC termination statements and by providing plaintiff with a release.

■ "The best and most inclusive name" for the tort of slander of title [4] "is that of 'injurious falsehood.'" W. Prosser, *The Law of Torts* § 122 at 939 (3d Ed. 1964). Prosser identifies injurious falsehood, or disparagement, as "publication of matter derogatory to the plaintiff's title to his property ... of a kind calculated ... to interfere with his relations with others to his disadvantage." *Id.* at 943.

■ In this diversity action, the court looks to Maine law to determine the rights of the parties. However, since there is a dearth of Maine authority, it is necessary to look to the common law of other jurisdictions.[5]

■ In an action for slander of title, "plaintiff must show that there has been a

---

**4.** Plaintiff also complains of a threat to convert and infliction of emotional distress. The former claim, although based on the Bank's assertion of a lien on plaintiff's boat, must be distinguished from slander of title. In order to be actionable, the Bank's conduct with respect to any alleged threat must have been "extreme" or "outrageous." W. Prosser, The Law of Torts § 11 (3d Ed.1964). Plaintiff does not explicate this claim at any length, either in his pleadings or his memoranda, concentrating instead on the claim of slander of title. Similarly, the court first addresses the slander of title claim, which necessarily involves a resolution of the issue of defendant's conduct.

The claim of infliction of emotional distress is dependent upon plaintiff prevailing against the Bank on the underlying tort, *see Packard v. Central Maine Power Co.*, 477 A.2d 264, 268 (Me.1984), in this case either slander of title or threatening to convert.

**5.** As noted by the Magistrate, the closest analogue to the tort of slander of title for which Maine authority exists is the tort of interference with advantageous business relationships. The Maine Supreme Judicial Court recently addressed the elements of this tort in *DiPietro v. Casco Northern Bank*, 490 A.2d 215 (Me.1985), noting that Maine law requires that the plaintiff plead fraud or intimidation. In addition, the Maine Court has implied that *actual* interference with possession or use of property is an element of tortious interference with advantageous business relationships. *See Eastern Milling Co. v. Flanagan*, 152 Me. 380, 130 A.2d 925 (1957).

In the present case, analogizing to the tort of interference with business relationships is not useful. Neither fraud nor intimidation, nor actual interference with the use or possession of property, is a necessary element of slander of title, nor has plaintiff alleged these elements. As a consequence, the court must look to the common law of jurisdictions which have recognized the tort of slander of title.

In his Objections to the Recommended Decision, at 22–23, plaintiff argues that the Maine Supreme Judicial Court should be asked to define the cause of action for slander of title, in particular the special damages element of the tort of slander of title and the affirmative defense of qualified privilege. In order for a question of law to qualify for certification to the Supreme Judicial Court, it is necessary that it appear that the response could be "determinative of the cause," Me.Rev.Stat.Ann. tit. 4, § 57, and could have "controlling impact on a decision of the merits of the cause," *Hiram Ricker & Sons v. Students International Meditation Society*, 342 A.2d 262, 264 (Me.1975), *appeal dismissed*, 423 U.S. 1042, 96 S.Ct. 764, 46 L.Ed.2d 631 (1976).

The question of special damages would be determinative only if the Supreme Judicial Court were to hold that this element of the tort required plaintiff to establish impairment of vendibility, *see infra* note 7, in which case, plaintiff would be unable to state a cause of action for slander of title. However, since the court resolves plaintiff's claim on other grounds, it is not necessary to reach the issue of special damages. Accordingly, certification of this question to the Supreme Judicial Court would not be appropriate.

The question of qualified privilege could be determinative of the cause, were the Supreme Judicial Court to determine that defendant does not enjoy such a privilege. However, this court does not find any significant split in authority among other jurisdictions with respect to the defense of qualified privilege. Both the element of malice and the defense of qualified privilege are well established in the caselaw. *See* 50 Am.Jur.2d Libel and Slander §§ 544, 547 (1970). Accordingly, the dispositive issues in this case are not unresolved questions of law as to the elements of the tort of slander of title. Rather, determination of this cause turns upon whether the Bank has shown by a preponderance of the competent evidence that it enjoys a qualified privilege and whether plaintiff has proved by a preponderance of the evidence that the Bank acted with malice.

malicious publication of false allegations concerning the title to his property causing special damages." *Markowitz v. Republic National Bank of New York*, 651 F.2d 825, 828 (2d Cir.1981); *see also Landstrom v. Thorpe*, 189 F.2d 46 (8th Cir.), *cert. denied*, 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620 (1951); *Frega v. Northern New Jersey Mortgage Association*, 51 N.J.Super. 331, 143 A.2d 885 (App.Div.1958). In other words, plaintiff must prove "falsity," "publication,"[6] "malice," and "special damages."[7] *See* Prosser, *supra*, § 122.

■■■ Malice is the "gist of the action" for slander of title. *Markowitz*, 651 F.2d at 828 (citing *Andrew v. Deshler*, 45 N.J.L. 167, 170 (N.J.1883)). Although malice may be implied in some circumstances, *see, e.g., Gates v. Utsey*, 177 So.2d 486 (Fla.Dist.Ct. App.1965) [malice may be inferred where information published is false, or without legal justification], where the defense of privilege is raised "the presumption of malice is rebutted and ... the plaintiff must then prove actual or genuine malice in order to recover." *Id.* at 488.

■■■ The Bank asserts the qualified privilege of a "rival claimant." "A rival claimant is conditionally privileged to disparage another's property ... by an assertion of an inconsistent legally protected interest in himself." Restatement (Second) of Torts § 647 (1977). According to the Restatement, a "claimant" is "one who asserts that he has property in land, chattels or intangible things. If two persons claim one or more of the same legally protected interests, they are 'rival claimants.'" *Id.* comment c.

■■■ In the circumstances of this case the Bank and plaintiff are "rival claimants." The gravamen of the slander of title action is that on March 12, 1984, when the Bank filed a financing statement asserting a security interest in the hull which plaintiff had contracted to buy, plaintiff was a "buyer in the ordinary course of business," *see* Me.Rev.Stat.Ann. tit. 11, § 9–307. Thus, on March 12, 1984, both the plaintiff and the Bank were asserting a property interest in the boat being constructed by OCY for plaintiff.

■■■ Since the Bank possessed the qualified privilege of a rival claimant, plaintiff has the burden of showing that the Bank did not have a good faith belief in the "possible validity of [its] claim," Restatement (Second) of Torts § 647 comment d (1977), but rather that it acted in knowing or reckless disregard of the truth, *see id.* § 623A. In particular, plaintiff has the burden of showing that the Bank knowingly or recklessly disregarded plaintiff's

---

**6.** The filing of liens, mortgages, and other encumbrances is a sufficient publication to disparage or slander title. *See* Prosser, *supra*. Thus, it is not necessary for the defendant to have taken affirmative action to enforce its lien; mere refusal to release the lien may be actionable. *See, e.g., Markowitz*, 651 F.2d 825. But plaintiff must show that the publication was false. Plaintiff would have to prove that the Bank did not have a valid encumbrance on the boat, which would depend upon whether plaintiff was a "buyer in ordinary course of business," *see* Me.Rev.Stat.Ann. tit. 11, § 9–307(1).

The court does not reach that question, however, as it is not essential to a disposition of plaintiff's action. Thus, for the purposes of the pending motions for summary judgment, the court assumes, without deciding, that plaintiff has met the proof requirements of a "false publication."

**7.** In many jurisdictions, proof of special damages, i.e., pecuniary loss, requires a showing that there was an impairment of vendibility. *See* Annotation, *What Constitutes Special Damages in Action for Slander of Title*, 4 A.L.R. 4th 532 (1981). In the present case, plaintiff complains of such an impairment due to the reference to a lien contained in his bill of sale. However, the adverse effect of this reference upon the vendibility of plaintiff's boat is conjectural. Plaintiff does not claim that he has attempted to sell the boat to a particular prospective buyer and that he has been impeded in doing so by the lien of the Bank. Absent such an unsuccessful attempt to sell, most courts requiring a showing that there has been an impairment of vendibility have held that the claim is not actionable. *Id.* at 542–47.

Some jurisdictions, however, have held that an injured party has the right to recover, as special damages, the litigation expenses incurred in removing the effects of the slander; even in the absence of an impairment of vendibility. *Id.* at 560–62. *See also* Restatement (Second) of Torts § 633 (1977). In the present case, plaintiff predicates his claim to special damages on such litigation expenses.

The court, however, resolves plaintiff's claim on other grounds.

rights when it asserted a security interest in plaintiff's boat on March 12, 1984.

The Bank has produced affidavits stating that, in filing and asserting its lien against plaintiff's boat, it acted on the basis of its experience as a commercial lender, as well as upon the provision in the contract between plaintiff and OCY which provides that title remains with OCY until the full purchase price has been paid. Plaintiff responds that, upon identification of the boat to the contract, plaintiff became a buyer in the ordinary course of business entitled to take the boat free from any lien created by the seller (OCY); that the Bank, as an experienced lender, should have known this; and, therefore, that the continued assertion of a lien by the bank was malicious.

As a matter of law, the Bank's assertion of a security interest in the boat being constructed for the plaintiff by OCY did not evidence malice on the part of the Bank. It is not clear under the Uniform Commercial Code that the Bank would not have prevailed had there been an actual contest for the right to possess the uncompleted vessel. In *Holstein v. Greenwich Yacht Sales, Inc.*, 122 R.I. 211, 404 A.2d 842 (1979), the court took the position advocated by plaintiff, equating "identification" of goods to the contract, *see* U.C.C. §§ 2–401(1), 2–501, with a "purchase" that cut off the creditor's security interest. *See* 404 A.2d at 845. However, in *Chrysler Corp. v. Adamatic, Inc.*, 59 Wis.2d 219, 208 N.W.2d 97, 105–06 (Wis.1973), the court held that a party with a contract to purchase goods was *not* a buyer in the ordinary course of business *until* title passed to the buyer. *See id.*, 208 N.W.2d at 106 (citing U.C.C. § 2–106(1): "a sale consists in the passing of title from the seller to the buyer for a price.")

Thus, although the caselaw is divided, a significant minority view holds that a purchaser of goods cannot become a buyer in ordinary course under U.C.C. § 9–307(1) before title to the goods has passed. *See generally, Chrysler Corp.*, 208 N.W.2d at 106–07 (discussing commentary considering when a contracting party becomes a buyer in the ordinary course). The issue had not been determined by the Maine courts prior to the time that the Bank perfected its security interest in plaintiff's boat. Under the terms of the contract between OCY and plaintiff, OCY held title to the boat which plaintiff had contracted to purchase at the time the Bank asserted its security interest. Accordingly, there was ample unsettled ground upon which the Bank could assert a good faith belief in the "possible validity of [its] claim," Restatement (Second) of Torts § 647, comment d (1977).

Therefore, the plaintiff has not satisfied the burden of setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiff has failed in particular to set forth facts sufficient to establish actual malice, which is an essential element of the cause of action for slander of title.[8] In their place, plaintiff has offered conjecture and conclusional allegations concerning the Bank's motives and state of mind. Plaintiff's allegations are insufficient to resist the present motion for summary judgment.

Plaintiff nevertheless argues that the Bank's motion for summary judgment should be denied, on the ground that there is a "serious credibility issue." Plaintiff's Objections to Recommended Decision, at 20. The argument is insufficient to withstand a properly supported motion for summary judgment. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), the Supreme Court stated:

> Respondents argue, however, that ... the defendant should seldom if ever be granted summary judgment where his

---

8. Some facts alleged by plaintiff, e.g., the absence of a power of sale in the 1984 security agreement between the Bank and OCY, are irrelevant. Other facts, e.g., the failure of the Bank to obtain advice of counsel in response to a legal opinion by plaintiff's attorney, are in no way inconsistent with the Bank's exercise of its privilege as a rival claimant. At best, the facts cited by plaintiff merely invite conjecture regarding the Bank's motives for its actions. The Bank's efforts to protect its security interest were wholly justified under its qualified privilege "to disparage another's property ... by an assertion of an inconsistent legally protected interest," Restatement (Second) of Torts § 647 (1977).

state of mind is at issue and the jury might disbelieve him or his witnesses as to this issue. They rely on *Poller v. Columbia Broadcasting Co.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), for this proposition. We do not understand *Poller,* however, to hold that a plaintiff may defeat a defendant's properly supported motion for summary judgment in a conspiracy or libel case, for example, without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of a conspiracy or of legal malice. The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

Accordingly, plaintiff's unsupported assertion that there is a credibility issue that must be decided by a jury is not enough to head off the Bank's motion for summary judgment.

▇ There being no genuine issue as to any material fact, it is hereby ORDERED that defendant's motion for summary judgment on all issues be GRANTED and that plaintiff's motion for partial summary judgment, both with respect to plaintiff's claim for damages and with respect to plaintiff's demand for declaratory judgment,[9] be DENIED.

---

9. Plaintiff seeks a declaratory judgment that the Bank does not have a lien upon his boat. However, as noted earlier, the Bank has relinquished any interest it may have had in the boat. On October 25, 1985, the Bank filed a termination statement with respect to its security interest. The Bank also has provided plaintiff with a release of its lien, signed by John P. Reeves, vice president and treasurer of the Bank, dated May 16, 1986. A copy of the release was filed with the court on June 5, 1986. As the Magistrate observed, this release "should resolve any question about any prospective claim of a lien on the boat by the Bank." Recommended Decision at 27. Accordingly, plaintiff's demand for declaratory judgment is moot.