Dr. E.G. **FISCHER,** Plaintiff, **Appellant,**

v.

**BAR HARBOR BANKING AND TRUST COMPANY,** Defendant, **Appellee.**

No. 87–2068.

United States Court of Appeals,
First Circuit.

Heard May 2, 1988.
Decided Sept. 9, 1988.

Gilbert P. Verbit, Boston, Mass., for plaintiff, appellant.

Thomas M. Brown with whom John F. Barnicle and Eaton, Peabody, Bradford & Veague, Bangor, Me., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN, Circuit Judge, and FUSTE,[*] District Judge.

FUSTE, District Judge.

Plaintiff-appellant, Dr. E.G. Fischer ("Fischer"), appeals from a summary judgment of the district court dismissing his diversity action for slander of title against the defendant-appellee Bar Harbor Banking and Trust Company ("Bank"). *Fischer v. Bar Harbor Banking & Trust Co.*, 673 F.Supp. 622 (D.Me.1987). Fischer contends the Bank committed this misdeed in asserting a lien on a sailboat being constructed for him by Ocean Cruising Yachts of Maine, Inc. ("OCY"). For the reasons set forth below, we affirm.

## I.

In 1983, Fischer entered into a contract with OCY for the construction of a custom-built sailboat at a total cost of $172,000. Under the terms of the contract, which required periodic progress payments, title would not pass from OCY to Fischer until Fischer paid the full purchase price and until OCY made delivery to him. At the time of contracting, Fischer was neither aware of any loan arrangements between OCY and the Bank, nor of any lien or security interests the Bank held against OCY property. We note that Fischer did not require OCY to provide a performance bond, a requirement often imposed by commercially sophisticated customers in similar circumstances.

By March 27, 1984, Fischer had made $112,125 in progress payments to OCY. Nonetheless, OCY, whose operations were financed by the Bank since 1979, was experiencing financial difficulties, particularly with its cash flow. To deal with this, in February 1984, the Bank consolidated two existing $100,000 loans to OCY into one loan. As guarantee for this new single obligation, OCY executed in favor of the Bank a promissory note for $200,000 and entered into a security agreement over four hulls in progress, including Fischer's sailboat hull. *See* Me.Rev.Stat.Ann. tit. 11, §§ 9–101–113. On March 12, 1984, the Bank filed with the Maine Secretary of State the financing statement in order to perfect its security interest.[1]

---

[*] Of the District of Puerto Rico, sitting by designation.

1. Since 1979, and without Fischer's awareness, the Bank provided OCY with a form of interim financing for the shipbuilding operation. It granted loans to OCY against inventory, hulls in progress, and accounts receivable. At times, the Bank rolled over loans to give economic breathing space to the shipyard. A rolled-over loan is nothing more than an extension on a previously binding obligation. Eventually, the buyer of the hull would secure his own financing for the

Fischer remained unaware of OCY's relation with the Bank and its financial troubles until the spring of 1984. In May, the president of OCY, Henry R. Hinckley III, informed Fischer that OCY was in serious financial trouble, its loan payments to the Bank were overdue, and the Bank claimed a lien on four sailboats, including his craft-in-progress. On May 19, 1984, Fischer, Hinckley, and the president of the Bank, Mr. Avery, met in an effort to resolve the situation. At that meeting, the Bank would not agree to release its security interest on the four boats unless OCY made a $200,000 loan payment. The Bank confirmed this position in writing, with a June 13, 1984 letter to Fischer from its vice-president and treasurer, John Reeves, stating the Bank would release its lien on Fischer's craft only upon a $50,000 payment. The Bank also sought $50,000 payments from each of the other three boat owners. The attorney for OCY, reacting to OCY's financial troubles, in a May 21, 1984 letter to the four prospective boat owners proposed a payment plan, and agreed that the Bank's lien was superior to their interests in the hulls.

Fischer later responded with a letter to the Bank drafted by his lawyer, contending that he was a "buyer in ordinary course of business" and, therefore, took free and clear of any security interest held by the Bank. Me.Rev.Stat.Ann. tit. 11, § 9–307(1). Thereafter, in July 1984, Hinckley informed Fischer that OCY was terminating operations. Fischer requested the removal of his boat to another shipyard, which was accomplished without the Bank's interference. Construction was completed in August of 1984. In the same month, Hinckley signed a bill of sale transferring title in the boat from OCY to Fischer that contained the following proviso: "Manufacturers Warranty and Title is Given Subject to Bank Lien." This condition was included at the advice of the attorney for OCY. The Bank was not aware of this inclusion.

On May 24, 1985, Fischer filed suit in federal court. On October 25, 1985, the Bank filed termination statements with the Maine Secretary of State regarding the UCC secured interest on the four boats. On June 5, 1986, the Bank filed with the district court a release of its lien on Fischer's boat.

## II.

The focus of Fischer's case for damages was that the Bank's March 12, 1984 UCC financing statement covering his hull and its continued assertion of a lien constituted slander of title to the sailboat. He contended that the Bank should have known that he was a buyer in ordinary course, and that the Bank was only trying to extract or extort $50,000 from him. Fischer also sought a declaration that the Bank had no valid lien. The Bank answered that the lien was asserted in good faith and before title passed to Fischer, or, in other words, that it possessed the conditional privilege of a rival claimant. Fischer moved for summary judgment on the request for declaratory relief, and partial summary judgment on his damage claim. Shortly thereafter, the Bank moved to dismiss the complaint or for summary judgment on all issues. Fed.R.Civ.P. 12(b) and 56.

Before disposition of these motions, a U.S. Magistrate's Recommended Decision scuttled Fischer's theory. The Magistrate recommended that the district court grant the Bank's motion and dismiss Fischer's damage claim. He further recommended that the court reserve judgment on the motion for declaratory relief pending a written statement that the demand for declaratory judgment had not been mooted. Fischer filed objections to the recommendation and resorted to *in extremis* maneuvering by requesting certification to the Maine Supreme Judicial Court of the issues of state law regarding slander of title. The district court declined, and on *de novo* review, held that the Bank possessed the

---

actual purchase. Banks roll over loans as a matter of commercial discretion and economic risk in order to assist those in need of financial relief and to maintain clients. Contrary to

Fischer's claim, we do not see any impropriety in this common commercial practice followed by financial institutions worldwide.

conditional privilege of a rival claimant, that Fischer did not set forth specific facts to establish actual malice, an element of his slander action, and that because the Bank filed the termination statement and a release of its lien, his request for declaratory relief was moot.

### III.

■ Fischer's main contention on appeal is that the district judge abused his discretion in denying his request to certify to the Maine Supreme Judicial Court the following issues on which there exists no Maine authority: (1) whether Maine jurisprudence would recognize the doctrine of "qualified privilege of a rival claimant" in an action for slander of title, (2) if so, whether the Bank is a "rival claimant" within the meaning of that privilege. On appeal, for the first time Fischer argues that the district court should have certified an additional issue: (3) whether he is a "buyer in ordinary course of business" under Me.Rev. Stat.Ann. tit. 11, § 9–307(1). We find no abuse of discretion on the part of the district court. Certification was not in order.

The decision whether to certify a state law issue to the state's high court "in a given case rests in the sound discretion of the federal court."[2] *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741,

1744, 40 L.Ed.2d 215 (1974). "The purpose of certification is to ascertain what the state law is ..." *Tarr v. Manchester Insurance Corp.,* 544 F.2d 14, 15 (1st Cir. 1976). However, "[i]n the absence of a definitive ruling by the highest state court, a federal court may consider 'analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.' " *Michelin Tires, etc. v. First National Bank of Boston,* 666 F.2d 673, 682 (1st Cir.1981).

■ With regard to the recognition of the conditional privilege of a rival claimant,[3] the district court found no "significant split in authority among other jurisdictions." *Fischer,* 673. F.Supp. at 625 n. 5. We think the district court correctly found no real debate in the law that one who maintains a competing claim to an interest in the property of another is conditionally privileged to assert a lien on that property in order to preserve his interest. *See Restatement (2nd) of Torts* ("Restatement") § 647 comment g (1977). With this right, a "rival claimant is conditionally privileged to disparage another's property in land, chattels or intangible things by an assertion of an inconsistent legally protected interest in himself." *Restatement* § 647.[4]

2. The decision is guided in some part by whether the state maintains a certification procedure. *Lehman Bros. v. Schein,* 416 U.S. 386, 391–2, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). Maine does. Pursuant to Me.Rev.Stat.Ann. tit. 4, § 57:

> When it shall appear to ... [any federal court], that there are involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify ... for instructions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as a law court may, by written opinion, answer.

We regard this statute as more than merely a basis of jurisdiction. As the Maine Supreme Judicial Court stated, "a concern to promote federal-state comity would counsel that, wherever reasonably possible, the state court of last resort should be given opportunity to decide state law issues on which there are no state precedents which are controlling...." *White v. Edgar,* 320 A.2d 668, 675 (Me.1974). Further-

more, certification saves "time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein,* 416 U.S. at 392, 94 S.Ct. at 1744 (footnote omitted). Nonetheless, for the reasons enunciated in the text, the district court properly denied certification.

3. Fischer apparently concedes that even in the absence of Maine law, there is sufficient, uniform common. law of other jurisdictions to determine the elements of a cause of action for slander of title. "[P]laintiff must show that there has been a malicious publication of false allegations concerning the title to his property causing special damages." *Markowitz v. Republic National Bank of New York,* 651 F.2d 825, 828 (2nd Cir.1981).

4. We feel comfortable, as the district court did, in applying the *Restatement,* a widely respected treatise on tort law. We note that the Maine Supreme Judicial Court has referred to the *Restatement* in establishing Maine law with regard to the tort of interference. *Harmon v. Harmon,*

The court properly decided, first, that the Bank effectively became a rival claimant and, second, that the Bank was entitled to assert the privilege. At the time that the Bank perfected its security interest, both had a legally protectable interest in the hull: Fischer contracted OCY for its construction and made almost three-quarters of its purchase price in progress payments, and the Bank had secured $200,000 in earlier loans with this hull and other boats under construction.[5]

We find Fischer's request for certification particularly inappropriate here. As plaintiff, he had knowledge of the state of the law under his theories for recovery, and had the choice of forums to file suit, either in the local courts or the federal court under diversity jurisdiction, 28 U.S.C. § 1332. As this court has previously stated:

> [O]ne who chooses the federal courts in diversity actions is in a peculiarly poor position to seek certification. We do not look favorably, either on trying to take two bites at the cherry by applying to the state court after failing to persuade the federal court, or on duplicating judicial effort.

*Cantwell v. University of Massachusetts,* 551 F.2d 879, 880 (1st Cir.1977); *see also Venezia v. Miller Brewing Co.,* 626 F.2d 188, 192 n. 5 (1st Cir.1980). Furthermore, his seeking certification on the issue of buyer in ordinary course is made for the first time on appeal. Though the failure to raise the issue would not necessarily prevent our certifying at this late stage, it considerably weakens plaintiff's insistence on his right to certification. *Cf., Perkins*

*v. Clark Equipment Co.,* 823 F.2d 207, 210 (8th Cir.1987). We take a dim view of Fischer's attempt to circumnavigate the reach of the district court on an issue not properly before the court. We note that in his complaint, Fischer sought a declaration that the Bank had no valid lien on the sailboat, rather than a declaration that he was a buyer in ordinary course.

### IV.

■ Moving to the district court's other substantive determinations, we agree that Fischer provided insufficient evidence to show that the Bank acted with malice in filing its March 12, 1984 filing statement, and continuing to assert a lien on the unfinished sailboat. In deciding this issue, the court correctly determined that it was of no consequence whether, in order to judge actual malice, Fischer occupied the esteemed position of buyer in ordinary course.[6] Whether Fischer is a buyer in ordinary course is not the issue. The issue is whether the answer to that question was so obvious as to constitute a finding that the Bank acted with actual malice. For both legal and factual reasons, the answer to this inquiry is no. Though a review of the authorities cited in the district court opinion indicates that in a contest for possession of the hull Fischer could have won on the merits, *see Holstein v. Greenwich Yacht Sales, Inc.,* 122 R.I. 211, 404 A.2d 842 (1979) (identification of the goods of the contract cuts off the creditor's security interest), there is support for the Bank's position, *see Chrysler Corp. v. Adamatic, Inc.,* 59 Wis.2d 219, 208 N.W.2d 97 (1973) (buyer does not become buyer in ordinary

---

404 A.2d 1020, 1024 (Me.1979). Furthermore, there is no authority conflicting with the *Restatement* regarding the conditional privilege of a rival claimant.

**5.** "A common form of asserting such a claim is the filing for record of a lien or other encumbrance." *Restatement* § 647 comment g.

Under the *Restatement,* section 647, a rival claimant may only assert the privilege if he has a good faith belief in its possible validity. Comment d. As the appellant correctly noted, this requires plaintiff to prove actual malice, or in other words, to prove that the rival claimant "acted in knowing or reckless disregard of the

truth" in disparaging plaintiff's property. *Fischer,* 673 F.Supp. at 626.

**6.** A buyer in ordinary course is a "person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker." Me.Rev.Stat. Ann. tit. 11, § 1–201(9). He "takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Me.Rev.Stat.Ann. tit. 11, § 9–307(1).

course until title passes to buyer). Fischer, in his brief on appeal, makes much of commentators' negative criticism of the *Adamatic* case, but offers no authority in support of his claim that he was a buyer in ordinary course at the time the Bank perfected the secured transaction. Fischer ignores the fact that under the hull construction contract with OCY, title to the boat would not pass until the full purchase price had been paid.[7] Under the *Adamatic* case, the Bank had sufficient legal authority to support its position. Having structured the ship's construction contract under the *Adamatic* approach, the appellant stands on thin ice in disclaiming the application of that particular view. What existed at this point were competing claims to a superior interest between the two parties. The Bank, like Fischer, was at least entitled to press its right to superiority before relinquishing it in the judicial setting.[8]

Lastly, merely because Fischer's lawyer asserted in an extrajudicial letter that Fischer was a buyer in ordinary course does not mean the Bank had to drop sails and paddle home. Institutions who hand out loans to businesses are expected to protect their investments in order to decrease their exposure to monetary loss. The Bank merely acted in accordance with its customary practice with OCY. *See* footnote 1, p. 5. Moreover, it was OCY's attorney who took the position that the Bank had a priority interest over the four sailboat buyers. OCY, not the Bank, included the qualification on the bill of sale that the purchase was subject to the Bank's lien. The facts, together with the status of the law, seen as a whole, are insufficient to establish malice on the part of the Bank.

7. The passing of title to the buyer carries certain risks, rights, and responsibilities for the buyer, *e.g.*, insuring against the risk of loss and paying certain taxes.

8. Fischer contends that in a related case brought by another of the four OCY boat owners against OCY and the Bank, the district court ruled a similar Bank lien invalid. *See David Pyles v. Bar Harbor Banking & Trust Co.*, No. 84–0227–B (D.Me. July 27, 1984). He further contends that, in light of this decision, the Bank lawyer's August 3, 1984 letter to Fischer, stating

V.

We conclude that the district court properly denied certification that Maine jurisprudence would recognize the conditional privilege of a rival claimant in a slander of title action, and that the district court properly applied the privilege to the facts.

*The decision of the district court is affirmed.*

COFFIN, Circuit Judge (dubitante).

I respectfully question whether the district court properly granted summary judgment on the issue of the Bank's malice. Although the evidence of malice in this case is not strong, I do not believe a jury would be foreclosed from finding that the Bank acted maliciously, and therefore was not entitled to exercise the privilege of a rival claimant.

In an affidavit, Bank President Robert Avery stated that he continued to believe the Bank's liens on the four boats were superior to the interests of the boat buyers *"until* the point in time when this Court rendered a decision in the case of *David Pyles v. Ocean Cruising Yachts of Maine, Inc. and Bar Harbor Banking & Trust Company, No. 84–0227–B."* (Emphasis added.) In the *Pyles* case, the district court granted a preliminary injunction allowing Pyles—another of the four boat buyers whose boats were involved in the OCY–Bar Harbor security arrangement— to remove his boat from OCY's shipyard upon his furnishing a surety bond and a certificate of property insurance coverage. Despite Avery's statement implying that he no longer believed the lien was valid as of the time of the *Pyles* decision, which was

the Bank had a security interest in his hull, is objective evidence of malice. However, contrary to what Fischer maintains, the district court did not rule the lien invalid, but granted a preliminary injunction allowing the boat owner to remove his hull from OCY property subject to his providing a surety bond and a certificate of property insurance coverage. All legal options remained open. The letter is not inconsistent with the preliminary injunction and is, therefore, no evidence of malice.

**10**

issued July 25, 1984, the Bank's lawyer on August 3 sent a letter to Fischer asserting the Bank's security interest in the boat and noting that the Bank would be entitled to any improvements Fischer decided to make on the vessel.

I believe that Avery's affidavit supports plaintiff's argument that a factual dispute, based on objective evidence, remains on the issue of malice.