John S. PORTER, Plaintiff, Appellant,

v.

Harold NUTTER, et al., Defendants, Appellees.

No. 89–1834.

United States Court of Appeals, First Circuit.

Heard Aug. 1, 1990.

Decided Sept. 11, 1990.

38

Andrew D. Dunn, with whom Devine, Millimet, & Branch and Cynthia A. Satter, were on brief for defendants, appellees.

Before CAMPBELL and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

SELYA, Circuit Judge.

Invoking diversity jurisdiction, 28 U.S.C. § 1332, plaintiff-appellant John S. Porter, a Floridian, sued several local citizens, including appellee Ronald Griffin, in the United States District Court for the District of New Hampshire.[1] The district court, acting on a Rule 12(b)(6) motion, dismissed Porter's complaint against Griffin for failure to state a cognizable claim. Following entry of judgment under Fed.R. Civ.P. 54(b), Porter appeals.

## I

"In reviewing a Rule 12(b)(6) dismissal, we take the well-pleaded facts as they appear in the complaint, indulging every reasonable inference in plaintiff's favor." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). Utilizing this approach, Porter's amended complaint, read in its most flattering mien, reveals the following:

1. Griffin, Porter, and Raycraft worked for a common employer, Rockingham Venture, Inc. (RVI), which owned and operated a racetrack in Salem, New Hampshire. Griffin was a supervisor whose duties included reviewing safety precautions and directing work crews. Porter and Raycraft were subordinates who did plumbing repairs and general labor.

2. On July 20, 1987, the three men were toiling near the ladies' rest room at the racetrack. Performance of the job required Porter to work in a trench. He was not furnished with any headgear or other protective equipment.

3. Several times, Porter asked Griffin to remove a propane tank hovering near the trench's edge. Griffin had both the authority and the wherewithal to relocate

Lee C. Nyquist, with whom Devine and Nyquist and Merrick C. Weinstein, were on brief for plaintiff, appellant.

---

1. Plaintiff's case against one such person, James Raycraft, remains pending in the district court.

the tank, but neglected to do so. Eventually, misfortune struck. Raycraft, said by plaintiff to be a "known user and abuser of alcohol," attempted to leap across the fissure, causing the omnipresent tank to fall into the trench. The tank struck Porter, seriously injuring him.

The district court, reading these facts liberally in plaintiff's favor, nonetheless believed Griffin to be immune from suit. We agree.

## II

■ State substantive law controls in this diversity case. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Moores v. Greenberg,* 834 F.2d 1105, 1107 (1st Cir. 1987). We begin our exposition by remarking that, under New Hampshire law, tort liability between coemployees is something of a gray area. The state supreme court in recent years has wrestled with the problem and determined that an employee may not sue a fellow employee for negligently-inflicted injuries sustained in the course of the employment if the putative defendant was simply carrying out the employer's nondelegable duty to maintain a safe workplace. *See Rounds v. Standex International,* 131 N.H. 71, 76–77, 550 A.2d 98, 101–02 (1988); *see also Taylor v. Nutting,* —— N.H. ——, ——, 578 A.2d 347, 348 (1990) (summarizing holding in *Rounds* ). To rule otherwise, the court reasoned, "would vitiate the purpose of the workers' compensation law." *Rounds,* 550 A.2d at 102. Thus, an employee can be liable in negligence to a coemployee only for the breach of some duty "distinct from the employer's duty to maintain a safe workplace." *Id.*

The New Hampshire Supreme Court amplified the purport of *Rounds* in *Tyler v. Fuller,* —— N.H. ——, 569 A.2d 764 (1990). There, the court rejected a proposed distinction premised on "active" versus "passive" negligence, 569 A.2d at 767, and observed that, for one employee to owe a separate and distinct duty to another, "something extra" was required: "It must be 'an affirmative act which increase[s] the

risk of injury' and is beyond the scope of the employer's nondelegable duty to provide a safe workplace." *Id.* 569 A.2d at 769 (quoting *Kruse v. Schieve,* 61 Wis.2d 421, 213 N.W.2d 64 (1973)). The court's use of the conjunctive is noteworthy; to be actionable, the actor's conduct must not only increase the risk to plaintiff but must also exceed, and arise independent of, the responsibilities that the actor, standing in the employer's shoes, was required all along to fulfill.

■ The theory and burden of this line of cases is apparent. In New Hampshire, as elsewhere, an employer has a nondelegable duty to provide employees with a safe place to work. *See, e.g., Moore v. Company,* 89 N.H. 332, 335, 197 A. 707, 710 (1938). The sweep of the duty is broad: "The working conditions must be as safe as the nature of the place of employment reasonably permits...." *Wasley v. Kosmatka,* 50 Wis.2d 738, 744, 184 N.W.2d 821, 824–25 (1971). Although the duty is itself nondelegable, it is routinely implemented through agents, supervisory employees entrusted by the employer with carrying out the employer's common-law duty. When a supervisor's alleged negligence comprises conduct in derogation of this duty, an injured coemployee cannot sue the supervisor; after all, "[t]he duty of proper supervision is a duty owed by a ... supervisory employee to the employer, not to a fellow employee," and breach of it is, therefore, not actionable by the latter (the injured party being remanded, in effect, to his rights under the workers' compensation statutes). *Tyler,* 569 A.2d at 768 (quoting *Kruse,* 213 N.W.2d at 67). It is only when the supervisor's conduct transcends the scope of the employer's duty that negligence will ground a suit by an injured fellow employee. Hence, a right of action inures when the act or omission occurs "in the [supervisor's] separate and distinct capacity as coemployee[ ]." *Id.* 569 A.2d at 769.

## III

■ We think that these authorities are dispositive of the instant appeal. Griffin

was the overseer at the job site and, as the amended complaint unambiguously alleges, was in charge of safety precautions. In carrying out that responsibility, he was carrying out RVI's nondelegable duty to its work force. Requiring Porter to perform his chores in the presence of a known, curable hazard presumably violated RVI's duty to furnish Porter a safe place to work. Leaving the dangerous condition in place, particularly after attention had been called to it, presumably violated Griffin's duty to RVI. Yet, nothing in the amended complaint's factual scenario suggests that Griffin was guilty of any act or omission apart from, or beyond the scope of, RVI's duty to ensure that "[t]he working conditions [would] be as safe as the nature of the place of employment [here, the trench] reasonably permit[ted]." *Wasley*, 184 N.W.2d at 824–25. In short, the claimed negligence occurred while appellee was "merely executing the employer's duty." *Tyler*, 569 A.2d at 766. "Something extra" was lacking.[2]

Appellant focuses obsessively on a single excerpt from the *Tyler* opinion:

An important factor to consider is the nature of the alleged negligence. If there is some direct involvement which creates a personal duty of care, liability may be asserted notwithstanding *Rounds* if such an independent duty is breached by a supervisory employee acting in the capacity of a co-worker/co-employee.

569 A.2d at 769. From this passage, he divines that cases like this one turn not on the scope of the employer's duty, but on the degree of the supervisor's involvement. But, this conclusion stands logic on its ear. Read in context, the analysis which *Tyler* directs starts not with the relationship between fellow employees, but with the relationship between the negligent actor and the employer; not with the supervisor's conduct, but with the scope of the employer's duty. If the negligence occurs in connection with the "supervisory duties which the defendant performs for the employer," then the defendant "has breached a duty owed to the employer and not to the employee." *Id.* It is only when the defendant "steps out of his or her role as a supervisor" that a personal duty of care to the injured employee arises. *Id.* And unless such a duty can be shown, the degree of the actor's involvement is immaterial. *See id.* (requiring, conjunctively, that conduct sued upon be both risk-increasing and beyond the scope of the employer's nondelegable duty to furnish a safe place to work).[3]

Here, the facts alleged in no sense show that Griffin acted (or more precisely put, failed to act) beyond his supervisory capacity. Despite his direct involvement in the mishap, Griffin was standing in the shoes of the employer, plain and simple, when he neglected to remedy the on-site hazard and thereby contributed to the happening of the accident. He was obliged to relocate the tank by virtue of the employer's duty, which had devolved upon him as RVI's agent; that Porter also requested the tank's removal was beside the point. Because *Rounds* and its progeny do not allow an injured employee to maintain an otherwise-precluded tort suit by the simple expedient of calling a failure to provide safe working conditions by some other appellation, Porter cannot sue Griffin on these facts.

### IV

We need go no further. In diversity jurisdiction, "[o]ur function is not to formulate a tenet which we, as free agents,

---

2. In the case of a supervisory employee, "something extra," as that phrase was intended by the *Tyler* court, must mean something apart from, beyond, or transcending "the category of supervisory duties which the [supervisor] performs for the employer" in order to make the workplace reasonably safe. *Tyler*, 569 A.2d at 769; *see also Kruse*, 213 N.W.2d at 67–68.

3. Indeed, if "direct involvement" itself can create an independent duty duplicative of the employer's duty, as appellant asseverates, then the exception would harbor the potential to swallow virtually the entire rule. We do not think *Rounds* and *Tyler* can so easily be skirted, especially since appellant's view of the primacy of direct involvement comes perilously close to reintroducing the dichotomy between "active" and "passive" negligence specifically rejected by the court in *Tyler*, 569 A.2d at 767.

might think wise, but to ascertain, as best we can, the rule that the state's highest tribunal would likely follow." *Kathios v. General Motors Corp.*, 862 F.2d 944, 949 (1st Cir.1988). If we are unwilling to stretch state precedents to reach new frontiers, a litigant like Porter, who deliberately "chose to reject a state-court forum in favor of a federal forum ... is in a perilously poor position to grumble" about our stodginess. *Kassel v. Gannett Co.*, 875 F.2d 935, 950 (1st Cir.1989). *See also Croteau v. Olin Corp.*, 884 F.2d 45, 46 (1st Cir.1989); *Cantwell v. University of Massachusetts*, 551 F.2d 879, 880 (1st Cir.1977); *cf. Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1349 (1st Cir.1988) (party removing case from state court "hard put to complain if the federal court follows state practice in regard to state-law claims"). We may, perhaps, be unadventurous in our interpretation of New Hampshire law, but a plaintiff who seeks out a federal venue in a diversity action should anticipate no more.[4]

*Affirmed.*

4. We have considered certification of this case to the New Hampshire Supreme Court, but believe it unnecessary, for reasons stated elsewhere, to embark on such a course. *See Kassel*, 875 F.2d at 950 n. 14; *Fischer v. Bar Harbor Banking & Trust Co.*, 857 F.2d 4, 8 (1st Cir. 1988), *cert. denied*, — U.S. —, 109 S.Ct. 1135, 103 L.Ed.2d 2196 (1989); *see also Bi–Rite Enterprises, Inc. v. Bruce Miner Co.*, 757 F.2d 440, 443 n. 3 (1st Cir.1985) ("it is inappropriate for a federal court to use [certification] when the course state courts would take is reasonably clear"). At any rate, we are particularly hesitant to certify state-law questions where, as here, both parties, upon direct inquiry at oral argument, expressed a contrary preference. *Cf. Fischer*, 857 F.2d at 8 (case for certification "considerably weaken[ed]" when district court was not asked to certify question).