Robert Draper, Plaintiff-Appellee and Cross-Appellant, v.
Minneapolis-Moline, Inc., a Corporation, Defendant-
Appellant and Cross-Appellee.

Gen. No. 68–26.

Third District.

October 14, 1968.

Rehearing denied November 19, 1968.

Peter H. Lousberg, of Rock Island, for appellant.

Donald E. Blodgett, of Rock Falls, for appellee.

CULBERTSON, J.

This appeal presents questions concerning the Uniform Commercial Code, (Ill Rev Stats 1965, c 26, pars 1–101 thru 10–104) and stems from a judgment for $2,396.70 entered in favor of the plaintiff, Robert Draper, against the defendant, Minneapolis-Moline, Inc., after a bench trial in the Circuit Court of Whiteside County.

On December 30, 1966, plaintiff entered into a written contract with Larry Meiners, a farm equipment dealer who handled defendant's products, for the purchase of a new Minneapolis-Moline tractor and a new six-bottom plow for use on plaintiff's farm. By the terms of the contract various extras, including a cab and radio, were to be installed on the tractor by the dealer; plaintiff was to trade in an old tractor and an old plow; and delivery was to be "by" April 1, 1967. The net purchase price of $5,300 was to be paid on delivery. Subsequently, on a date not entirely clear from the record, the old and the new plows were exchanged but nothing was paid on the contract.

At the time the contract was entered into, the dealer did not have the required tractor in stock, but received one from defendant on or about January 26, 1967. This machine was delivered under a trust receipt and a trust receipt financing agreement, both of which gave Meiners the right to sell the tractor at retail in the ordinary course of business, and provided that to the extent permitted by law, the security interest would attach to the proceeds of sale. In this regard, it is undisputed that defendant

retained and perfected a valid security interest. By one of the provisions of the trust receipt, it was provided that the machine could be repossessed if the dealer defaulted in the terms for payment.

Shortly after the dealer received the machine, plaintiff came to the store and was shown the tractor and was told that it was his. At the trial plaintiff recalled that the last three digits of the serial number on the tractor shown to him were "804," and this coincided with the number shown on the purchase agreement between the dealer and defendant. The dealer had not as yet received the cab called for by the contract and this appears to have delayed delivery of the tractor to the plaintiff. On one occasion, apparently in February, 1967, the dealer offered to let plaintiff take the tractor without the cab but plaintiff refused the offer.

During the last week of February, 1967, the completion of a routine audit disclosed the dealer to be greatly in arrears for substantial sums of money owed to defendant. When it became apparent that he was not financially able to correct or alleviate the situation, defendant repossessed all of its products on the store premises for which it had not been paid, including the tractor plaintiff had been told would be delivered to him under his contract. At the time plaintiff had neither turned in his old tractor nor had he paid anything to the dealer. Plaintiff then negotiated directly with defendant to complete the deal, but the negotiations fell through because defendant, as a manufacturer, was in no position to accept a trade-in or to provide and install the contract extras. It is undisputed that plaintiff thereafter did his spring plowing with his old tractor, and that he incurred expenses of $396.70 he would not have had if the new tractor had been available to him. This action against defendant for damages soon followed.

■ The authority for plaintiff's action is found in section 2–722 of article 2 of the Uniform Commercial

Code (hereinafter referred to as the Code), which, in substance, gives to one having a special property interest in goods a right of action against a third party who "so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract." (Ill Rev Stats 1965, c 26, par 2–722.) The quoted language, we believe, intends that a third party would be liable for conversion, physical damage to the goods, or interference with the rights of a buyer in the goods. Section 2–103(1)(a) of article 2 states that in such article: " 'Buyer' means a person who buys *or contracts to buy goods,*" (Ill Rev Stats 1965, c 26, par 2–103 (1)(a); emphasis added), and it is thereafter provided in section 2–501(1) in pertinent part:

> "The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers *even though the goods so identified are non-conforming* and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs
> "(a) . . .
> "(b) if the contract is for the sale of future goods . . . , when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers;
> "(c) . . . ."

> Ill Rev Stats 1965, c 26, par 2–501(1); emphasis added.

While defendant makes a mild argument that the tractor did not conform to the contract because the extras had not been installed when it was pointed out by the dealer, we think it manifest from the evidence that there was a complete and sufficient identification of the tractor

to the contract within the purview of section 2–501(1). It is apparent, too, that defendant's conduct made it impossible for the dealer to deliver the tractor to plaintiff, and that defendant so dealt with the goods as to interfere with plaintiff's special property interest. And, without more, it could be said that plaintiff has standing to maintain an action for damages as authorized by section 2–722. However, there next arises the question of whether plaintiff obtained his special property interest, and its attendant rights, free and clear of defendant's security interest.

█ Section 9–307(1) of article 9 of the Code provides in pertinent part: "A buyer in ordinary course of business (subsection (9) of Section 1–201) . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." (Ill Rev Stats 1965, c 26, par 9–307(1).) The trial court here found that plaintiff was a buyer in ordinary course of business within the definition of subsection 9 of section 1–201, and that he therefore, under authority of section 9–307(1), took his special property interest in the tractor free of defendant's security interest. And while the trial court reached the correct result, it is our opinion that his reliance upon section 9–307(1) was misplaced. In the "Official Comment" by those who drafted the Uniform Commercial Code, it is said of section 9–307:

> "The limitations which this Section imposes on the persons who may take free of a security interest apply of course only to unauthorized sales by the debtor. If the secured party has authorized the sale in the security agreement or otherwise, the buyer takes free without regard to the limitations of this Section. Section 9–306 states the right of a secured party to the proceeds of a sale, authorized or unauthorized." West, ULA, Uniform Commercial Code, Master ed, Vol 3, § 9–307, p 185.

Here the sale of the tractor to plaintiff was not unauthorized. Rather, both the trust receipt and the trust receipt financing agreement gave the dealer (seller) the express authority to sell the tractor at retail in the ordinary course of business, and provided that the security interest would attach to the proceeds of sale. The very intent of the commercial papers involved was that the tractor could be sold to a buyer, (see: section 2–103(1) (a)), free and clear of the security interest of the seller's creditor. Accordingly, we hold that plaintiff obtained his special property interest in the tractor free and clear of defendant's security interest, and that such security interest is no bar to the action for damages given to plaintiff by section 2–722.

The remaining issue for determination relates to damages which, as previously noted, were awarded to plaintiff in the amount of $2,396.70, of which $396.70 is undisputed and represents expenses incurred by plaintiff because he was denied the use of the new tractor for his 1967 spring plowing. The remaining $2,000, which is disputed, was awarded by the trial court as "cover" under section 2–712 of the Code (Ill Rev Stats 1965, c 26, par 2–712), and was based on plaintiff's testimony that the contract price was $2,000 less than that quoted to him by another Minneapolis-Moline dealer (his brother-in-law) for the same kind of tractor. Section 2–712, relating to "cover," provides as follows:

> "1. After a breach within the preceding section the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

> "2. The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (Sec-

tion 2–715), but less expenses saved in consequence of the seller's breech.

"3. Failure of the buyer to effect cover within this Section does not bar him from any other remedy."

We are in accord with the contention of defendant that the trial court erred in awarding $2,000 as "cover." While we think the competency of the proof by which the $2,000 figure was established is suspect (see: Ill Rev Stats 1965, c 26, §§ 2–713, 2–723 and 2–724; Tully v. Western Union Tel. Co., 141 Ill App 312, 315), it is enough to say that section 2–712 is inapplicable under the facts of this case. That section, in unambiguous terms, has application only where a buyer actually buys goods in substitution for the goods he expected to receive from the seller, and provides as the measure of damages the difference between the cost of cover and the contract price. The plaintiff here did not purchase another tractor as cover, thus the award of $2,000 was a windfall to which he was not entitled.

For the reasons stated the judgment of the circuit court of Whiteside County is affirmed in part and reversed in part, and the cause is remanded to that court with directions to enter judgment for the plaintiff in the amount of $396.70.

Affirmed in part, reversed in part, and remanded with directions.

ALLOY, P. J. concurs.

STOUDER, J., specially concurs.

SPECIAL CONCURRING OPINION

STOUDER, J.

I concur in the result reached by the majority of the court and agree substantially with the reasoning em-

ployed in such opinion. Plaintiff-Appellee's position in this court is at best ambiguous. He attempts to sustain the judgment of the trial court by asserting that the court properly applied damage rules relating to contracts and by cross-appeal asserts the trial court erred in not applying the tort rule of damages applicable to conversion.

In my view of this case plaintiff's claim was a tort claim based on conversion. Once having concluded as the majority opinion does, that plaintiff has sufficient interest to bring the action against a third-party tortfeasor, I believe it should follow that not only did plaintiff fail to introduce evidence in accord with section 2–712, chapter 26, Ill Rev Stats 1965, but additionally that such section was inapplicable. In my opinion section 2–712, supra, applies only to actions for breach of contract and has no application to damages where the action is based on tort.

I believe that the general rule respecting damages for conversion is applicable namely, the fair cash market value of the property converted at the time and place of conversion. I concur with the result reached by the majority of the court because I believe there is a total failure of evidence in regard to such damage. Although plaintiff argues to the contrary the sales contract cannot be regarded as evidence of such value. As indicated in the majority opinion the contract is a "trade-in" or an exchange contract. It can be characterized essentially as a "cash difference" contract. So long as the same cash difference is maintained, prices and credits may be varied arbitrarily in a variety of ways. No inferences of value can be supported by such allocations.

Accordingly I agree with the majority of the court that there is a failure of evidence on the damage issue.