404 A.2d 842.

JOHN HOLSTEIN *et al. d.b.a.* MELVIN HOLSTEIN & CO. *vs.*
GREENWICH YACHT SALES, INC. *et al.*

AUGUST 15, 1979.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ. Joslin, J., not participating.

212

KELLEHER, J.   This is a Superior court civil action to determine who has the superior claim to a 27-foot sailless sailboat. The claimants are a Massachusetts general partnership known as Melvin Holstein & Co. (Holstein)[1] and Stanley H. Gladych, Jr. (Gladych). A Superior Court justice ruled in Holstein's favor, and Gladych appealed, claiming that the trial justice misconstrued certain provisions of the Uniform Commercial Code (the Code), G.L. 1956 (1969 Reenactment) Title 6A.

The named defendant, Greenwich Yacht Sales, Inc. (Greenwich), is in the business of selling boats. Its place of business is an East Greenwich waterfront boatyard. Holstein, by its own admission, is a specialist in marine financing. In mid-September 1976 Holstein agreed to provide floor-plan financing[2] so that Greenwich could pay a California boat builder for boats that were being shipped by truck to East Greenwich. Holstein supplied the cash at just about the time when two of the boats arrived at the yard, and on September 23, 1976, Greenwich, through its president, executed two promissory notes, each payable to the order of Holstein. One note was for $9,571.50 and listed as collateral for its collection:

---

[1] In its financing agreement with Greenwich Yacht Sales, Inc., Melvin Holstein & Co. appears to be doing business as Mystic Marine Finance.

[2] Floor-plan financing is a common method of lending money to an automobile or boat dealer so that the dealer may purchase the goods which make up its inventory. The lender secures the loan by the filing of a financing statement, and, as the goods are sold, the dealer is expected to pay the bank from the proceeds of the sale. Ordinarily, the lender periodically checks the state of the inventory to insure that the dealer is abiding by the loan agreement, which in the case at bar had a provision that the seller would notify the lender of a pending sale and obtain its release before the sale was effectuated.

"1 — 1976 Newport 27
Hull No. 551, Serial No. CPY27551M77A
Complete with sails and appurtenances"

The other note called for the payment of $14,433 and listed as collateral another "1976 Newport 27."[3] A third note which is in the record indicates that a "1977 Challenger 24" arrived at the yard in early October.

The subject matter of this dispute is "1976 Newport 27 Hull No. 551." On September 29, 1976, a financing statement giving Holstein a security interest in this vessel was duly recorded in the Secretary of State's office. The statement's description of the boat is identical to the description of the collateral found in the promissory note. However, the day before the filing, on September 28, Gladych and Greenwich had signed a purchase-and-sale agreement which specifically identified the boat as the "Newport 27 #551." Gladych signed the contract without knowledge of the financing agreement between Holstein and Greenwich. He paid $12,000 of the $15,000 purchase price by a check dated September 29, 1976, and $2,500 by a check dated December 22, 1976. The $500 balance was to be paid upon delivery.

The agreement also called for the supplying of "optional equipment," which included such items as sails, a bow pulpit, lifelines, a stern rail, winches, a head, and a bilge pump. Also listed as optional extras were "commissioning in spring" and "winter storage."[4]

On February 3, 1977, Greenwich was in default on a series of promissory notes held by Holstein. Upon learning that Greenwich was selling boats in violation of their security agreements, Holstein instituted this civil action seeking to

---

[3]Testimony at the hearing, as well as the amount of the note, indicates that the second Newport's length was 30 rather than 27 feet.

[4]At the hearing, there was evidence indicating that in the boat-selling business any boat sold in late September is given free storage because New England's sailing season begins in May and ends in October.

repossess the security. At that time Hull No. 551 was still in Greenwich's yard. Two days later Gladych moved to intervene as an additional party defendant by virtue of his alleged September 28, 1976, purchase.

The trial justice ruled that Gladych was not a buyer in the ordinary course of business because "there was no sale and no passage of title." Consequently, the trial justice ruled that Holstein could repossess. We disagree.

The trial justice's allusion to a buyer in the ordinary course of business reminds us that §6A-9-307(1) of the Code provides in its pertinent part: "A buyer in ordinary course of business * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Both claimants agree that their respective rights are to be governed by this section. Holstein contended before us, and the trial justice accepted the proposition, that Gladych could not be classified as a buyer because of the relevant language of §6A-2-401(1), which reads: "Title to goods cannot pass under a contract for sale prior to their identification to the contract * * * and unless otherwise explicitly agreed the buyer acquires by their identification a special property * * *."

In arguing no identification, Holstein places great emphasis on the undisputed fact that at the time Gladych and Greenwich executed the purchase agreement, none of the optional equipment had been installed on or within the hull. The trial justice, in relying on the lack of identification, observed that "[o]ther things had to be done by the seller in order to put this boat in a condition whereby delivery would be made and title would pass and those things have not been done even to this day. Therefore, I am satisfied that Gladych's contract to purchase the vessel involved did not ripen into a sale * * *." We disagree with the trial justice's conclusion.

Section 6A-2-501 recognizes that from the moment when goods are identified to a contract of sale, the buyer has a "special property * * * interest" which may arise before the

passage of title or the seller's delivery of the goods. This section makes it clear that if the contract is for a sale of goods already existing and identified, identification occurs when the contract is made, or if the contract relates to the sale of future goods, the goods are identifiable when they are shipped, marked, or otherwise designated by the seller as goods to which the contract refers.

In clear and unmistakable language, the drafters of the Code have stated that there is no necessity that goods, to be identifiable, have to be in a deliverable state. Specifically, comment 4 to §6A-2-501 reads:

"In view of the limited function of identification there is no requirement in this section that the goods be in deliverable state or that all of the seller's duties with respect to the processing of the goods be completed in order that identification occur."

We believe that the evidence indicates that the 27-foot boat was identified to the contract at the time the purchase-and-sale agreement was executed on September 28, 1976. The sales contract between Gladych and Greenwich clearly specified the existing "Newport-27 #551." The fact that the boat was not outfitted with all its extras[5] does not bar its identification to the contract, especially in light of comment 4.

A similar view to ours has been expressed in *Draper* v. *Minneapolis-Moline, Inc.*, 100 Ill. App. 2d 324, 241 N.E.2d 342 (1968). In *Draper*, the plaintiff agreed to buy a new tractor and certain extras, including a cab and radio, from a dealer. At the time the contract was made, the dealer did not have the specified tractor in its inventory but received one shortly thereafter. The buyer went to the store and was shown the tractor and was told that it was his. At trial the buyer testified that the last three digits of the tractor's serial number were identical with the last three digits of the serial

---

[5]During the April repossession hearing, Greenwich's president told the trial justice that the only remaining items of the boat's accessories lacking at that time were its sails. The seller still owed the sailmaker $350 on a pair of sails that were valued at $700.

number shown on the sales agreement. Consequently, the court held that there was a "complete and sufficient identification of the tractor to the contract" within the purview of the Code, even though certain extras were never installed on the tractor.

Gladych viewed the Newport-27 at Greenwich's yard, and the parties specifically referred to it as hull "#551" in the sales contract. This evidence, in our opinion, is sufficient to identify the specific boat to the contract at the time the contract was made. Consequently, because of the provisions of §6A-2-501, Gladych on September 28 obtained a special property interest in and to Hull No. 551 that was superior to the security interest held by Holstein.

Holstein, hoping to take possession of an almost fully equipped boat, also argues that, regardless of the identification issue, Gladych's claim must fail because there was no passage of title since the boat had not been delivered. This argument, in light of our finding of identification and in the absence of any explicit agreement as to the necessity of delivery before recognition could be afforded Gladych's special interest, is totally irrelevant.

Initially, such an argument would like to postpone the time at which a purchaser can benefit from the "purchase in good faith" doctrine from the moment of identification to that of delivery. Holstein overlooks the fact that while §6A-2-103(1)(A) defines a buyer as one who "buys or contracts to buy goods," this definitive section mentions neither title nor delivery. Section 6A-9-307(1) is patterned after §9-2(a) of the Uniform Trust Receipts Act, which protected buyers "to whom goods are sold and delivered." As §6A-9-307(1) does not mention delivery, this omission is further evidence that the deletion of the delivery requirement was intentional.

Thus, the Code makes it possible for an individual to become a buyer at the time of identification rather than at the time of delivery. Courts[6] which have accepted this

[6]*Rex Financial Corp.* v. *Mobile America Corp.*, 119 Ariz. 176, 178, 580 P.2d 8, 10 (Ct. App. 1978); *International Harvester Credit Corp.* v. *Associates Fin. Serv.*

analysis have held that a buyer need not take possesion to be a buyer in the ordinary course.[7]

In *Matthews* v. *Arctic Tire, Inc.*, 106 R.I. 691, 694, 262 A.2d 831, 833 (1970), we noted that when inventory is delivered to a debtor, the secured party gives implicit, if not express, authorization for the sale of the collateral and thereby surrenders any claim in the inventory to a buyer in the ordinary course of business. Reliance on a debtor's possession of inventory has its risk. An inventory check today is no guarantee against a sale tomorrow. The identification approach requires inventory financiers to become better acquainted with the inventory and marketing practices of their borrowers. The risk of loss in such situations quite properly should be on the lender rather than on the buyer.

The defendant's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court with a direction to order judgment in favor of Gladych.

Mr. Justice Joslin did not participate.

*Tillinghast, Collins & Graham, Peter V. Lacouture*, for plaintiffs.

*Edwards & Angell, Andrew J. Chlebus*, for defendants.

---

*Co.*, 133 Ga. App. 488, 492-94, 211 S.E.2d 430, 433-34 (1974); *Chrysler Credit Corp.* v. *Sharp*, 56 Misc. 2d 261, 270, 288 N.Y.S. 2d 525, 534 (1968).

[7]The historical evolution of §6A-9-307(1) and a further exposition and endorsement of the role identification can properly play in mercantile affairs is found in the following thoroughly informative discourse: Dolan, *The Uniform Commercial Code and the Concept of Possession in the Marketing and Financing of Goods*, 56 Tex. L. Rev. 1147 (1978).