616 So.2d 1051 (1993)
KIT CAR WORLD, INC., et al., Appellants,
v.
Richard SKOLNICK, et al., Appellees.
AMERICAN SURETY AND CASUALTY COMPANY, Appellant,
v.
KIT CAR WORLD, INC., et al., Appellees.
Nos. 92-500, 92-1050.
District Court of Appeal of Florida, Fifth District.
April 2, 1993.
Rehearing Denied April 30, 1993.
*1052 Terry A. Brooks, Terry A. Brooks, P.A., Orlando, for Kit Car World, Inc., Daytona Coach Builders, Inc., Orlando, Classic Cars, Inc., Robert M. Tietz and Eileen M. Tietz.
Edmund T. Baxa, Jr. and John R. Hamilton, Foley & Lardner, Orlando, for American Sur. and Cas. Co.
Jeffrey L. Dees, Dunn, Abraham, Swain & Dees, Daytona Beach, for Judy Snow, Joe Hudson, Dill Schlesman, Charles Totra, Clay Beard, Philip Keen and Don Whitaker.
No appearance for Richard Skolnick.
COBB, Judge.
Kit Car World, Inc., and other corporations owned by Robert and Eileen Tietz, (hereinafter "secured creditors"), appeal a judgment finding them liable for conversion of personal property and awarding money damages to the adverse parties. The secured creditors' surety appeals an order entered in the same case allowing the plaintiffs in the conversion action to recover their money damages from a replevin bond that was posted before the secured creditors executed a writ of replevin.
In January, 1988, the secured creditors transferred to the debtor, Richard Skolnick, molds, equipment, inventory and other assets necessary to manufacture and sell replica car kits of a 1953 Corvette. In consideration, the debtor executed a promissory note for $185,000.00, with the debt secured by all assets related to the replica car kits, including inventory and all after-acquired property. The promissory note and security agreement provided that the debtor would pay $500 upon the note each time he collected full payment for a kit, and the debtor was obligated to sell a minimum of 50 car kits the first fifteen months and every twelve months thereafter, or be deemed in default. The debtor also promised to provide monthly financial reports.
In April, 1989, the debtor defaulted upon the note and security agreement by failing to make payments when due and not providing the required monthly financial reports. As a result of the default, the secured creditors accelerated the balance due under the note and filed suit against the debtor seeking damages for the unpaid balance and seeking possession of the property covered by the security agreement.
On November 2, 1989, the secured creditors served upon the debtor a pre-judgment writ of replevin directing seizure of the assets under the security agreement. Among the items seized were steel frames, fiberglass bodies, molds, and other component parts and inventory used in the assemblage of replica car kits. After the execution *1053 of the writ of replevin, the debtor ceased to conduct business. Seven customers of the debtor were allowed by the trial court to file complaints in intervention alleging that they each owned a replica car kit which had been wrongfully converted by the secured creditors. The customers had each paid full price for a car kit, but the debtor's assets were seized before he could assemble and deliver them.
After a non-jury trial, the trial court entered final judgment in favor of the seven customers for money damages, finding that the secured creditors converted a car kit belonging to each customer and that the secured creditors did not have an interest in the car kits under the after-acquired property clause of the security agreement since they were "consumer goods." The judgment awarded the customers damages individually in the amount each paid for a replica car kit, plus interest.
The secured creditors on appeal claim that under Florida's Uniform Commercial Code[1] their interest in the debtor's inventory was superior to any interest claimed by the customers. The customers claim a superior interest as "buyers in the ordinary course of business."
Section 679.307, Florida Statutes (1991), reads as follows:
679.307 Protection of buyers of goods.
(1) A buyer in ordinary course of business other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.
(2) In the case of consumer goods, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family, or household purposes unless prior to the purchase the secured party has filed a financing statement covering such goods.
A "buyer in the ordinary course of business" is defined in pertinent part as follows:
671.201 General definitions.
(9) "Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker ...
The definition of a "buyer in the ordinary course of business" requires that a sale of goods actually occur. Section 672.105(2), Florida Statutes (1991), states that goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are considered "future goods."
One who contracts to buy future goods may become a buyer in the ordinary course of business at the point when the goods are shipped, marked, or otherwise designated by the seller as goods to which the contract refers. See § 672.501(1)(b), Fla. Stat. (1991); Daniel v. Bank of Hayward, 144 Wis.2d 931, 425 N.W.2d 416 (Wis. 1988). In the instant case, though, there was no evidence indicating that any of the goods in possession of the debtor at the time of replevin had been identified to a particular contract.
Robert Tietz testified that after the items were seized, an attempt was made to match numbers found on the frames and bodies with numbers on purchase orders, but there was no correlation. The trial court found that the debtor did not assign serial numbers on the frame or body until immediately prior to shipping. Although the testimony at trial indicated that the debtor could have supplied and delivered approximately seven complete kits from the seized inventory, it is clear that the secured creditors did not seize seven completed kits on the date of replevin. The debtor testified that there may have been one unit in crated form that was either ready for delivery at the time of the seizure *1054 or would have been ready for delivery the next day. There was no evidence that even this particular kit had been identified to a specific contract.
The UCC does not require goods to be in a deliverable state in order for identification to occur. See § 672.501, Fla. Stat. (1991); Holstein v. Greenwich Yacht Sales, Inc., 122 R.I. 211, 404 A.2d 842 (R.I. 1979). However, this case illustrates the importance of having some type of identification of goods to the contract. The evidence revealed that there were many other customers who did not intervene in this action who paid full purchase price for a replica car kit. Since there was no evidence that any of the unfinished car kits were identified to a contract, the customers which would have eventually received those seven kits had the debtor remained in business is a matter of pure speculation. The evidence did not establish that the customers-intervenors had any interest in the items seized that would be considered superior to the security interest.[2]
The second ground supporting the final judgment was that the secured creditors did not have an interest in the debtor's after-acquired property. The secured creditors argue on appeal that the security agreement specifically created an interest in all related after-acquired property. The trial court found that the debtor's assets were "consumer goods," which under the UCC are subject to an after-acquired property clause only if obtained by the debtor within ten days after the secured party gives value.
Section 679.204, Florida Statutes (1991) reads in pertinent part:
679.204 After-acquired property: future advances.
(1) Except as provided in subsection (2), a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral.
(2) No security interest attaches under an after-acquired property clause to consumer goods other than accessions (section 679.314) when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value.
.....
The final judgment stated that the entire inventory seized was produced or obtained more than ten days after the secured creditors' sale of assets to the debtor.
Section 679.204(2) was adopted to protect consumers. If a consumer purchases goods and a security interest is created in his seller, there is no expectation that the goods will be sold or otherwise disposed of and similar replacement goods obtained. A secured party will make credit available and obtain a security interest in specific consumer goods. Neither party should legitimately expect that additional consumer goods purchased by the debtor at some later point will be subject to that same security agreement. See Hawkland, Lord and Lewis, UCC Series § 9-204:03 (Art. 9).
The debtor was not a consumer, but the principal officer of a business corporation. Except for consumer transactions, section 679.204 validates floating liens without time restrictions. The security agreement in the instant case contained an after-acquired property provision relating to the debtor's commercial assets. The assets seized by the secured creditor were inventory goods, not consumer goods. As stated in Franklin Investment Co. v. Homburg, 252 A.2d 95, 97 (D.C.App. 1969), with regard to secured transactions the manner in which a product is classified is determined at the time of the security agreement, and the categorization remains unaffected by a later transfer of the product in question.
We reverse the final judgment entered in favor of the intervenors, and remand for entry of judgment in favor of the secured creditors. We likewise reverse the judgment *1055 entered against the surety and remand for entry of an order discharging the replevin bond.
REVERSED and REMANDED.
DAUKSCH and GRIFFIN, JJ., concur.
NOTES
[1] Chapter 671, et seq., Florida Statutes (1991).
[2] We disagree with the language in Wilson v. M & W Gear, 110 Ill. App.3d 538, 66 Ill.Dec. 244, 442 N.E.2d 670 (Ill. App. 1982), which emphasizes the contract for sale and availability of goods in a seller's inventory rather than the identification of those goods with a particular buyer or contract in determining priority of interests.