

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   AZ-17-1162-BLKu |
| ) | |
| PHOENIX HELIPARTS INC., ) | Bk. No.   2:15-bk-12003-DPC |
| ) | |
| Debtor. ) | Adv. No.  2:16-ap-00331-DPC |
| _____ ) | |
| ) | |
| ROBERT REISH; KATHLEEN REISH; ) | |
| RYUKO, INC., ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| PHOENIX HELIPARTS, INC. ) | |
| LIQUIDATION TRUST, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on February 23, 2018,
at Phoenix, Arizona

Filed - May 7, 2018

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Daniel P. Collins, Bankruptcy Judge, Presiding

Appearances:   Appellants Robert Reish, Kathleen Reish and Ryuko, Inc., did not appear for argument; James E. Cross of Cross Law Firm, PLC argued for appellee Phoenix Heliparts, Inc. Liquidation Trust.

Before:   BRAND, LAFFERTY and KURTZ, Bankruptcy Judges.

_____

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Appellants Robert Reish ("Reish"), Kathleen Reish, and Ryuko, Inc. appeal an order granting summary judgment to the liquidating trustee determining that a transfer of a helicopter from the debtor to Reish was an unauthorized postpetition transfer and ordering that the liquidating trustee recover from the Reishes the proceeds from the sale of the helicopter to a third party. Because we determine that the bankruptcy court applied an incorrect legal standard and, as a result, material questions of fact exist, we VACATE and REMAND for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Prepetition events**

Phoenix Heliparts, Inc. ("PHP") was in the business of, among other things, purchasing and refurbishing wrecked or salvaged helicopters, bringing them back to airworthy status, then selling them at retail.  Prior to the petition date, PHP was owned by three parties, including its former president, Tina Cannon.

Reish is a retired commercial airline pilot.  Over the years, he purchased several helicopters from PHP.  According to Reish, some helicopters were purchased for personal use while others were purchased for commercial use.  In the past, Reish has donated flight services to various law enforcement agencies for search and rescue and reconnaissance for locating illegal drug farms.  The Reishes own 100% of Ryuko, a Wyoming corporation, that was established to hold title to helicopters used for Reish's law enforcement-related efforts.

Two helicopters and a promissory note are at issue in this appeal:

MD Helicopter, Model 369FF, Serial No. 0041FF ("0041FF")

In 2009, PHP purchased the 0041FF from RotorMate USA. The original owner of the 0041FF, Utility Aviation, Inc., transferred the aircraft to XL Specialty Insurance Co., who transferred it to RotorMate USA, who then transferred it to PHP. When the 0041FF was owned by Utility Aviation, it was encumbered by a lien in favor of Wells Fargo.

On February 13, 2014, PHP and Reish executed a contract to sell the 0041FF to Reish for the "Base Project Price" of $1,395,000. Reish was to make his first payment of $500,000 by April 25, 2014. Reish paid an initial deposit of $5,000 prior to the sales contract on December 16, 2013, when Cannon first offered him the 0041FF for purchase. The "Total" price and "Final Payment" date for the 0041FF was "TBD" (to be determined). The 0041FF was to be delivered to Reish in an airworthy condition "F.O.B. Mesa, Arizona."

Since the 0041FF had been wrecked, PHP needed to make significant repairs before it could deliver it to Reish "with all systems operational, a current Airworthiness Certificate, Flight records up to date, all mandatory Airworthiness Directives and Service Bulletins complied with." The delivery date was to be approximately seven months after Reish paid his deposit and after the parties had agreed upon the scope of work. A bill of sale was also executed on the sale date, which would be delivered to Reish upon full payment of the purchase price.

Ultimately, PHP failed to complete the repairs required to render the 0041FF airworthy, and it was not delivered to Reish as agreed under the sales contract prior to PHP ceasing operations.

-3-

As late as September 2015, Reish was still pushing PHP to finish the 0041FF so he could sell it to another party. As of the date of the commencement of the adversary proceeding, the 0041FF was still not airworthy.

Although no party submitted documentary evidence to the bankruptcy court showing that PHP and Reish ever agreed upon a final scope of repairs or final sale price for the 0041FF, it is undisputed that by March 26, 2015, Reish had paid $1,220,000 in cash to PHP towards his purchase of it. Reish stated at his Rule 2004 examination that $1,395,000 was the "Total" price, regardless of the "TBD" designation, and that if any scope of work on the 0041FF did change after the contract was signed it did not add any additional cost to the project. Also, at times, Reish claimed that the 0041FF was purchased for personal use, but at other times indicated that it was purchased for commercial use. The court recognized this factual issue was in dispute.

MD Helicopter, Model 369D, Serial No. 1170229 (the "Delta")

PHP and Reish executed a contract on February 19, 2014, to sell the Delta to Reish for a total price of $975,000. Reish paid the initial deposit of $150,000 on the same date. At the time, the Delta was essentially a hull. The contract for the Delta contained the same terms regarding the delivery of an airworthy craft to Reish and place of delivery. It is undisputed that, prepetition, Reish had paid $875,000 in cash to PHP for the Delta. At the time of PHP's bankruptcy filing, it was believed that the Delta was an incomplete shell, unable to fly, and that PHP was still in possession it.

////

The Ryuko Note

Sometime in early 2015, Cannon approached Reish for a loan so PHP could fulfill an alleged project with Boeing. Reish agreed to loan PHP $850,000. To get the $850,000, Reish explained that he could sell investments worth $1,275,000, but after payment of taxes only $850,000 would be available to lend. Thus, PHP would have to pay back $1,275,000 in exchange for the $850,000.

On April 17, 2015, on behalf of PHP, Cannon executed an installment note ("Ryuko Note") in favor of "Ryuko, Inc., Trustees Robert C. Reish and/or Kathleen A. Reish" calling for payment by PHP of $1,275,000 on or before April 1, 2016. Ryuko wired $850,000 to PHP in connection with the Ryuko Note on April 21, 2015. PHP never made any payments on the Ryuko Note.

**B. Postpetition events**

PHP filed its chapter 11[2] bankruptcy case on September 18, 2015. The bankruptcy filing was precipitated by a January 2015 state court judgment against PHP for $26 million and the state court's subsequent order requiring PHP to post a supersedeas appellate bond for $6,765,260.89. Neither Reish nor Ryuko was listed as a creditor in PHP's bankruptcy schedules or was otherwise notified of the bankruptcy case. Louie Mukai ("Trustee") was appointed chapter 11 trustee for PHP on October 22, 2015.[3]

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] Mr. Mukai also later served as the liquidating trustee in PHP's case. We refer to him as "Trustee" throughout the rest of
(continued...)

-5-

### 1. Sale of the 0041FF

After PHP's bankruptcy filing and Trustee's appointment, Cannon, without permission from Trustee or the court, orchestrated a sale of the 0041FF to the Azerbaijan Ministry of Defense ("AMOD"). Because PHP and RotorMate had failed to properly document PHP's 2009 purchase of the 0041FF, Cannon arranged for title to the 0041FF to finally be transferred from RotorMate to PHP and for the Wells Fargo lien to be released. Then Cannon transferred title to the 0041FF from PHP to Reish and facilitated the transfer of the 0041FF from Reish to AMOD on November 11, 2015. AMOD agreed to pay $2,322,000 for the 0041FF, but wired only $2,150,000 to Reish. No evidence was submitted indicating why AMOD transferred only $2,150,000 to Reish, or if AMOD ever paid Reish the remaining agreed purchase price. On November 25, 2015, AMOD, through its legal counsel, executed an unconditional acceptance of the 0041FF in its condition as of that date.[4]

Reish was not aware of PHP's bankruptcy when the sale of the 0041FF to AMOD took place in November 2015. He eventually learned of PHP's bankruptcy filing in January 2016. The bankruptcy court deemed the Reishes' and Ryuko's five untimely proofs of claim as timely, given the lack of notice. Trustee objected to all five claims, but those matters are not at issue in this appeal.

### 2. Creation of the Liquidation Trust

Thereafter, the bankruptcy court entered orders approving the

---

[3] (...continued)
the Memorandum.

[4] Despite the sale to AMOD, the Liquidation Trust still possesses the 0041FF.

-6-

sale of most of PHP's assets and confirming a plan of liquidation. The plan created the PHP Liquidation Trust and appointed Trustee. The Liquidation Trust was vested with all unadministered assets of PHP, including the rights to pursue avoidance and turnover actions.

### 3. Reish's adversary complaint and the parties' summary judgment motions

Reish filed an adversary complaint against the Liquidation Trust, seeking a determination of the nature, extent and validity of his interest in the 0041FF and the sale proceeds thereof and the nature of his interest in the Delta. Reish sought a declaration confirming that he owned the 0041FF, which he asserted was never property of the estate, and that he owned the $2,150,000 in sale proceeds.

Trustee filed his answer and counterclaims against the Reishes under §§ 549 and 550, and a counterclaim against counter-defendant Ryuko under § 548. In the counterclaims against the Reishes, Trustee sought to avoid the transfer of the 0041FF, which he contended was estate property when PHP filed its bankruptcy case, and to recover $2,322,000 — the value of the 0041FF at the time of the sale to AMOD. Trustee also sought a determination that the Delta was estate property.

Thereafter, Trustee moved for summary judgment on his counterclaims ("MSJ"). He argued that the only issue regarding the 0041FF was the date title transferred to Reish and whether it was before or after the petition date. Trustee argued that, under the sales contract, three things had to occur for both parties to have performed under the agreement: (1) full payment by Reish;

-7-

(2) issuance of a Certificate of Airworthiness evidencing that the 0041FF was fully repaired; and (3) delivery of an FAA Bill of Sale transferring title to Reish.

Trustee argued that, because the FAA Bill of Sale to Reish was not drafted until October 27, 2015, and because neither party performed their obligations prior to PHP's bankruptcy filing, title for the 0041FF did not transfer to Reish prior to the bankruptcy filing on September 18, 2015, and therefore the 0041FF was estate property on the petition date. Thus, the unauthorized transfer to Reish was a postpetition transfer avoidable under § 549. Because the value of the 0041FF was $2,322,000 on the date it was sold to AMOD, Trustee argued that the Liquidation Trust could recover that amount under § 550.

The Reishes and Ryuko opposed the MSJ and the Reishes filed a cross-motion for summary judgment. They argued that no basis existed to avoid the transfer of the 0041FF because it was a consumer goods purchase and therefore was never estate property as a matter of Arizona law. Specifically, the Reishes argued that they had a "special property interest" in the 0041FF, which arose on the contract formation date of February 13, 2014, and was superior to the Liquidation Trust's interest. The Reishes maintained that they had paid for the 0041FF in full prior to the petition date between cash payments and an "offset credit" of $175,000 on the Ryuko Note applied the day the $850,000 in Ryuko loan funds were wired to PHP.

In reply, Trustee maintained that no documentary evidence supported the contention that an "offset credit" of $175,000 was applied to the 0041FF. Trustee also contended that the Reishes'

-8-

claim that the 0041FF was purchased for personal use was contradicted by their proof of claim charging for lost rents. In any event, Trustee argued that the 0041FF was estate property on the petition date and even if the Reishes had a special property interest in it prepetition it was subject to the estate's interest.

The bankruptcy court entered its under advisement ruling partially granting the MSJ and denying the Reishes' cross-motion and dismissing their complaint with prejudice. In summary, the court found that the 0041FF and the Delta were estate property and, because the postpetition transfer of the 0041FF to Reish was an avoidable transfer, Trustee could recover from the Reishes the sale proceeds of $2,150,000. The court denied the MSJ as to the Liquidation Trust's claim against Ryuko under § 548 to avoid all but the $850,000 of the Ryuko Note as a fraudulent transfer.[5]

To reach its decision, the bankruptcy court determined that no valid setoff of $175,000 occurred to finish satisfying Reish's purchase price for the 0041FF because mutuality of the parties was lacking; Reish could not apply a credit of $175,000 owed to Ryuko for a Reish project such as the 0041FF. The same was true for the Delta and the alleged $100,000 setoff. Alternatively, the court found that even if there were setoffs for the 0041FF and the Delta, and that Reish had fully paid for them prepetition, both aircraft nonetheless remained property of PHP and, subsequently, of the Liquidation Trust. The court also determined that Reish

---

[5] Trustee has not cross-appealed the court's award of only $2,150,000 or its ruling on the Liquidation Trust's claim against Ryuko. Therefore, we do not address these issues.

never had a "special property interest" in either aircraft because they were not "goods" within the meaning of ARS § 47-2105(B); rather, they were only "future goods." Thus, no "special property interest" arose and Trustee's hypothetical lien under § 544 was superior to any interests Reish could assert against either aircraft.

The bankruptcy court entered an order partially granting the MSJ ("MSJ Order"), which provided that under Rule 7054 there was no just reason for delay in the entry of a final judgment as to the claims and parties.

This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(H) & (K).[6] We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court have subject matter jurisdiction over the Delta?

2. Did the bankruptcy court err in determining that Reish did not have a special property interest in the 0041FF?

3. Did the bankruptcy court err in granting the MSJ?

## IV. STANDARDS OF REVIEW

We review de novo questions of subject matter jurisdiction. Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1193 (9th Cir. 2005).

Whether property is included in a bankruptcy estate is a

---

[6] To the extent the bankruptcy court lacked jurisdiction, we discuss that issue below.

-10-

conclusion of law reviewed de novo. Groshong v. Sapp (In re MILA, Inc.), 423 B.R. 537, 542 (9th Cir. BAP 2010).

We review the bankruptcy court's interpretation of the Code and of state law de novo. Hopkins v. Cerchione (In re Cerchione), 414 B.R. 540, 545 (9th Cir. BAP 2009).

We review the bankruptcy court's decision to grant partial summary judgment de novo. Guerin v. Winston Indus., Inc., 316 F.3d 879, 882 (9th Cir. 2002).

## V. DISCUSSION

**A.    The bankruptcy court lacked subject matter jurisdiction over the Delta.**

While this appeal was pending, the parties learned that the Delta had been made airworthy and was sold prepetition on April 30, 2015, by PHP to a party named Winco, a bona fide purchaser. Trustee concedes that, due to this prepetition sale, the Delta was never property of the estate or the Liquidation Trust. The Reishes argue, however, that this does not moot the issue of ownership interests the bankruptcy court determined for the Delta. Trustee did not respond to this argument.

The bankruptcy court ruled that the Delta was estate property and that the Reishes had no interest in it. However, since the undisputed facts demonstrate that the Delta was never property of the estate, the court lacked subject matter jurisdiction to make any rulings as to this aircraft. Thus, any determinations the court made with respect to the Delta are VOID. See Ministry of Def. & Support for the Armed Forces v. Cubic Def. Sys., 385 F.3d 1206, 1226 (9th Cir. 2004) (a judgment is void if the issuing court lacked subject matter jurisdiction over the matter).

-11-

**B. The bankruptcy court erred in determining that Reish did not have a special property interest in the 0041FF.**

The bankruptcy court found that at no time pertinent to the transaction for the 0041FF was it both an identified and an existing good. Consequently, the aircraft did not constitute a good for purposes of A.R.S. § 47-2105(B); rather, it was a future good. As a result, the court found that Reish never obtained a special property interest in the 0041FF. The Reishes argue that the bankruptcy court erred in finding that the aircraft was not both identified and existing. We agree.

To determine the issue before us, a discussion of the pertinent provisions of the Arizona Commercial Code is in order. A.R.S. § 47-2105, in relevant part, defines goods as:

> A. "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . .
>
> B. **Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are "future" goods.** A purported present sale of future goods or of any interest therein operates as a contract to sell.

A.R.S. § 47-2105(A), (B) (emphasis added).

The identification of a good in a contract creates a special property interest. A.R.S. § 47-2501. In addition, "[t]itle to goods cannot pass under a contract for sale prior to their identification to the contract[.]" A.R.S. § 47-2401(1). Hence, the precondition for obtaining a special property interest in goods and for title to pass is that the goods must be "identified to the contract."

Identification of goods occurs in one of three ways: (1) at the time and manner expressly agreed to by the parties; (2) when

-12-

the sale contract is made, if the sale is for goods already existing and identified; or (3) if the contract involves the sale of future goods — i.e., those goods which are not both existing and identified — when the goods are shipped, marked or otherwise designated by the seller as the goods referenced in the contract.[7] "[T]he general policy is to resolve all doubts in favor of identification." A.R.S. § 47-2501, cmt. 2.

The bankruptcy court found that, while the 0041FF might have been identified, it was not existing at any point because the repairs required to make it airworthy were never completed; it was merely a shell, and the necessary components which needed to be installed were not. In essence, the court determined that, because the aircraft was not far enough along in the repair process, it was not an existing good. To reach this determination, the court relied on In re Carman, 399 B.R. 599 (Bankr. D. Md. 2009).

In Carman, the buyer contracted with the seller to build a

_____

[7] A.R.S. § 47-2501 provides, in pertinent part:

A. The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are non-conforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs:

1. When the contract is made if it is for the sale of goods already existing and identified;

2. If the contract is for the sale of future goods . . . when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers.

A.R.S. § 47-2501(A)(1)-(2).

-13-

32-foot motorboat for $140,000. The buyer paid $107,000 of the purchase price, but the boat was never completed or delivered to him. The seller ultimately filed a chapter 7 bankruptcy case. The chapter 7 trustee wanted to sell the unfinished boat to a third party. The buyer objected, claiming a special property interest in the boat which gave him a vested right to recover the boat from the seller upon making a tender of the unpaid purchase price. Id. at 601-02. In rejecting the buyer's argument, the bankruptcy court held that the unfinished boat was not an existing good, but rather was a future good in which the buyer did not obtain a special interest:

> Under the liberal standard for identification in Section 2-501, when the 32' hull came out of the mold in late 2006, it was identified by Mr. Carman, as the seller, as for the contract of the buyer, Mr. DeChello. Pursuant to the limited legal precedent and authority cited to the court by the parties, however, the hull was at best a "future good"; it was not an existing "good" in which Mr. DeChello, as buyer, was vested with a special interest. [citation omitted]. It was a hull; it was a shell; it was not a boat. It was a part, not a whole. It lacked propulsion.
>
> . . . .
>
> The good contracted for by Mr. DeChello was a motorboat. The bare 32' hull was not an existing boat. Therefore, it was not a "good." It was not even a non-conforming good; rather, it was a "future good." Mr. DeChello thus did not obtain a special interest in the hull under Section 2-501 of Maryland's Commercial Law Code.

Id. at 602-03.

In basing its decision on the Carman case, the bankruptcy court apparently chose to reject the weight of authority which supports a finding that the 0041FF was an existing good despite its unfinished state. This was error. See Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, 625 F.2d. 44, 47 n.2 & 3 (5th

-14-

Cir. 1980) (holding that a yacht-construction of which "was not totally complete" was a "good" within the meaning of the UCC and that interest could pass); Arthur Glick Truck Sales, Inc. v. Stuphen East Corp., 914 F. Supp. 2d 529, 542 n.17 (S.D.N.Y. 2012) (holding that goods can qualify as "existing" despite that seller has not yet completed installation and manufacturing and citing authority from jurisdictions with statutes similar to A.R.S. § 47-2501); Gonsalves v. Montgomery, 2006 WL 2711540, at *6-8 (N.D. Cal. Sept. 20, 2006) (collecting authority for the proposition that partially manufactured goods can qualify as existing and holding that under California Commercial Code § 2105(2), which is identical to A.R.S. § 47-2105(B), that a boat "consisting of a shell and a number of parts" was an "existing" good and one in which interest may be passed); Carey Aviation, Inc. v. Giles World Mktg., Inc., 46 B.R. 458, 462 (Bankr. D. Mass. 1985) (applying Arizona law; although not addressing the issue of existing explicitly, the bankruptcy court held that the buyer obtained a "special property interest" in a seized aircraft that was only two-thirds complete at the time and identified by the seller after contract formation in the seller's letter requesting funds from the buyer to complete the project); Holstein v. Greenwich Yacht Sales, Inc., 122 R.I. 211, 215-16 (R.I. 1979) (applying Rhode Island's version of UCC § 2-501, which is identical to A.R.S. § 47-2501(B), and holding that the boat identified in the sales contract as "Newport 27 #551" was an existing good even though the boat was not outfitted with all the extras agreed to under the contract at the time the secured creditor seized it from the builder's shipyard; accordingly, the buyer obtained a special

-15-

property interest in the boat superior to the security interest held by the floor-plan financier).

All of the above authorities relied, to some extent, on comment 4 to § 2-501 of the UCC, which is found in A.R.S. § 47-2501 and states: "In view of the limited function of identification there is no requirement in this section that the goods be in deliverable state or that all of the seller's duties with respect to the processing of the goods be completed in order that identification occur." Id. at cmt. 4. See also 3A Anderson, Uniform Commercial Code, § 2-501:18 (3d. ed. 2017) ("Anderson UCC") ("Whether the goods are in such a condition that they conform to the contract and may be delivered in performance of the contract is distinct from the question of whether the goods have been identified to the contract").

We are persuaded by the reasoning of these courts and conclude that a good does not need to be complete in order to be an existing good. Therefore, the bankruptcy court erred in determining that the 0041FF was not an existing good. Further, while Carman supports the bankruptcy court's finding that the 0041FF was not an existing good prior to PHP's bankruptcy filing, we find it distinguishable from this case. Here, the 0041FF was not being manufactured from scratch, as was the boat in Carman; it was once an airworthy aircraft, with an assigned serial number, that was damaged and in need of repair to make it airworthy again.

As for identification, Reish and PHP made no explicit agreement as to the time when identification of the 0041FF would occur. Therefore, identification occurred either: (1) at the time of contract if the aircraft was already existing and

-16-

identified; or (2) if the aircraft was future goods, then at the time it was "shipped, marked, or otherwise designated" by the seller. A.R.S. § 47-2501(A)(1)-(2). The sales contract for the 0041FF referenced the make, model, serial number and airframe hours. Thus, we conclude that it was identified when the contract was made: February 13, 2014. See Mitchell v. Transamerica Commercial Fin. Corp. (In re Doughty's Appliance, Inc.), 236 B.R. 407, 416 (Bankr. D. Or. 1999) (goods held by debtor as inventory were identified to specific contracts if the goods either had been tagged for specific buyers or corresponded to sales orders specifying "manufacturer, model number, SKU number, description and color"); Holstein, 122 R.I. at 215 (finding that the boat was identified when the contract was made because the parties specifically referred to it as "hull #151").

Accordingly, the 0041FF was an existing and identified good in which Reish obtained a special property interest at the time of contract, which was prior to PHP's bankruptcy filing. However, our inquiry does not end there.

Identification serves only a "limited purpose." Anderson UCC at § 2-501:17. While it gives a buyer a special property and insurable interest in the goods, it does not shift title to the buyer; it only allows title to pass. A.R.S. § 47-2501(A); Anderson UCC at § 2-501:24.

A.R.S. § 47-2401 provides that "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods," unless the parties have explicitly agreed otherwise. A.R.S. § 47-2401(2). The sales contract for the 0041FF is a "non-delivery" contract, in

-17-

that Reish was to pick it up at PHP's facility in Mesa, Arizona. Where delivery is to be made without shipping the goods, title passes to the buyer at the time and place the contract is made, unless the seller is required to deliver a "document of title." A.R.S. § 47-2401(3). In that case, "title passes at the time when and the place where [the seller] delivers such documents." A.R.S. § 47-2401(3)(a).

The sales contract for the 0041FF states:

> The SELLER warrants that the title of the Helicopter will be free and clear of all encumbrances at the time of said delivery of the helicopter to the PURCHASER and that the FAA Bill of Sale conveying title is executed by a fully authorized person and or persons.

Thus, PHP was to deliver a document of title — the "FAA Bill of Sale conveying title" — at some future date to convey title. That did not occur until the Reish sale to AMOD in November 2015, after the petition date.[8]

We disagree with the Reishes' argument that the 0041FF could never have been property of the estate. Based on the parties' agreement about when title would pass, title to the 0041FF did not pass to Reish until after the petition date, even if he did pay full price for it prepetition. Accordingly, title to the 0041FF was in PHP at the time of the petition, thereby giving the estate at least some interest in it. See § 541(a)(1) (property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case).

Even though title had not passed to Reish for the 0041FF

---

[8] Even if one considers the sales contract a "destination" contract, in that case title passes to the buyer at the time when the goods are tendered. A.R.S. § 47-2401(2)(b). The 0041FF was never tendered to Reish.

-18-

until after the petition date, by virtue of his special property interest he had rights with respect to the aircraft. See A.R.S. §§ 47-2502 and 47-2716. First, if certain conditions are met, a buyer has the right to recover the goods under A.R.S. § 47-2502. Even if the goods have not been shipped, a buyer who has paid a part or all of the price of goods in which he or she has a special property interest may, on making and keeping good a tender of any unpaid portion of their price, recover the goods from the seller if: (1) in the case of goods bought for personal, family or household purposes, the seller repudiates or fails to deliver as required by the contract; or (2) in all cases, the seller becomes insolvent[9] within ten days after receipt of the first installment on their price. A.R.S. § 47-2502(A)(1)-(2). In the case of consumer goods, the buyer takes the goods free of any security interest created by the seller if that security interest attached to the goods after the goods had been identified to the contract. A.R.S. § 47-2502, cmt. 3.

Second, a buyer with a special property interest has the right of replevin. A.R.S. § 47-2716 provides that, in the case where the goods have not shipped, the buyer "has a right of replevin for goods identified to the contract if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing . . . ." A.R.S. § 47-2716(C). As with A.R.S. § 47-

---

[9] An insolvency date for PHP was never established. Evidence suggested that perhaps PHP was insolvent by April 17, 2015, the day PHP executed the Ryuko Note, or by January 30, 2015, the date the state court judgment was entered against PHP. This appears to be a disputed material fact.

-19-

2502, a consumer buyer who acquires a right of replevin takes free of a security interest created by the seller if that security interest attached to the goods after the goods had been identified to the contract. See A.R.S. § 47-2716, cmt. 3.

Whether Trustee's hypothetical lien interest under § 544 is superior to that of Reish's special interest will have to be determined on remand. That answer will largely turn on whether the 0041FF is a consumer or commercial good. The Reishes presented evidence that the 0041FF was purchased for personal use. On the other hand, a proof of claim filed for that aircraft and various emails between Reish and PHP indicated that it may have been purchased for commercial use. Trustee took the position that the 0041FF was a commercial transaction based on the proof of claim. Because the court found that the 0041FF was not an existing and identified good in which Reish obtained a special property interest, it did not decide the disputed issue of whether the 0041FF was a consumer or commercial good.

The factual determination of whether the 0041FF is a consumer or commercial good is important here, as it affects what remedies Reish may have against the Liquidation Trust and whether his interest in that aircraft trumps that of the Liquidation Trust. On remand, the bankruptcy court will have to make that factual determination.

The Reishes also contend that the bankruptcy court erred in conclusively determining that no credits were or could be issued for the 0041FF when that issue was in dispute. The court determined that no valid setoff of $175,000 occurred to finish satisfying Reish's purchase price for the 0041FF because mutuality

-20-

of the parties was lacking. In other words, Reish could not apply a credit of $175,000 owed to Ryuko for a Reish project such as the 0041FF. The court apparently made its determination based on a term in the Ryuko Note, which said: "Principle's [sic] funds to be credited to Phoenix Heliparts, Inc. to cover the expenses of ongoing and future Ryuko, Inc. projects including, but not limited to, Aircraft S/N 0175FF; S/N 0041FF; and S/N 270082D."

The court viewed the Ryuko Note as unambiguous, in that credits could be applied only to Ryuko projects to satisfy the Ryuko debt. However, the Ryuko Note was not so clear. Although it stated that credits could be applied to "ongoing and future Ryuko projects," the Ryuko Note specially included "S/N 0041FF" – a Reish project. Accordingly, it appears that credits for some or all of the debt could or would be applied to at least one Reish project. Given the lack of clarity here, it was not proper for the court to resolve this disputed issue on summary judgment.

**C.   The bankruptcy court erred in granting the MSJ.**

Summary judgment is properly granted when no genuine issues of disputed material fact remain, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56 (applicable in adversary proceedings by Rule 7056); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Material facts are those that may affect the outcome of the case under applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). And issues are genuine only if the trier of fact reasonably could find in favor of the nonmoving party on the evidence presented. Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001)

-21-

(citing <u>Anderson</u>, 477 U.S. at 248-49).

The bankruptcy court made an error of law because it applied an incorrect standard for determining whether the 0041FF was an existing and identified good. Because of this, the court never made a determination on the disputed factual issue of whether the 0041FF was a consumer good. Further, the terms of the Ryuko Note and whether credits for Reish projects could be applied toward the debt was not clear. Accordingly, because material factual issues remain in dispute regarding the 0041FF, Trustee was not entitled to judgment as a matter of law, and the court erred in granting him partial summary judgment.

## VI. CONCLUSION

We VACATE the MSJ Order and REMAND the issues regarding the 0041FF to the bankruptcy court for further determination consistent with this decision.